50 P.3d 306 (2002)
Michael B. LAVIGNE, Appellant,
v.
CHASE, HASKELL, HAYES & KALAMON, P.S., Respondents.
No. 19550-3-III.
Court of Appeals of Washington, Division 3, Panel Eight.
July 23, 2002.
*307 Roger K. Anderson, Seattle, for Appellant.
Patrick N. Rothwell, Seattle, for Respondents.
BROWN C.J.
The appellants' predecessor corporation, RCL Northwest, Inc. (RCL),[1] obtained a 1991 default judgment against certain Arizona residents. RCL then hired the law firm of Chase, Haskell, Hayes & Kalamon (Chase) to collect the judgment. Chase registered the judgment in Arizona, but failed to renew it before it expired in 1996. RCL sued Chase for negligence. The trial court granted summary judgment to Chase, reasoning RCL produced no evidence showing the judgment was collectible. RCL appeals, arguing the negligent attorney should bear the burden of proving the lost judgment was uncollectible, an issue of first impression in Washington. Although we decline to adopt RCL's position, we find material fact issues remain regarding the value of the judgment in Arizona and its collectibility before the failure to renew the judgment. Accordingly, we reverse and remand for trial.

FACTS
On February 22, 1991, RCL obtained a default judgment in the Spokane County Superior Court totaling $85,065.71 against Alfred J. Bowen and Cheryl Bowen, husband and wife (Bowens). The Bowens resided in Arizona. In September 1991, RCL retained Chase to collect the judgment on a 40 percent contingency fee basis. Chase registered the Spokane judgment in an Arizona court on October 4, 1991. In 1992, Chase informed RCL that collection would be "very difficult" because of the Bowens' lack of unencumbered assets. Clerk's Papers (CP) at 37. The Bowens' divorce was apparently finalized in 1993. Nevertheless, Chase suggested the Bowens "may be willing to settle this matter." CP at 37.
An Arizona firm enlisted by Chase to aid in the collection effort related that Al Bowen seemed to be hiding assets to escape creditors, possibly by transferring ownership to his brother Tom Bowen. Later, RCL and Chase got into a dispute over costs incurred in connection with the collection effort. In 1996, Chase obtained a judgment against RCL in small claims court for $2,124.96 for costs owed.
In January 1997, Chase sent a letter to RCL terminating its representation. The letter partly stated, "You should be aware that the statute of limitations on enforcing your judgment is 10 years in the state of Washington. I do not know how long judgments remain enforceable in the state of Arizona." CP at 69. Arizona has a 5-year statute of limitation on renewing judgments, including judgments registered from another state. A.R.S. § 12-1611; A.R.S. § 12-1702. Hence, RCL's judgment had expired in 1996 and was no longer enforceable.
RCL filed a legal malpractice claim against Chase in 1998. Discovery ensued during which RCL admitted it had no "documentation" of assets owned by either Al Bowen or Cheryl Bowen. CP at 4-8. But RCL denied that it had no "evidence" that Al Bowen or Cheryl Bowen owned assets. CP at 4-8. Chase then filed a summary judgment motion alleging RCL could not establish a prima *308 facie malpractice claim. RCL filed responsive pleadings with numerous exhibits, including a transcript of a 1997 deposition of Al Bowen. In the deposition, Mr. Bowen asserted he owned very little property but also admitted he earned income in Arizona from consulting work he did for two companies owned by his brother Tom Bowen.
The trial court ruled the Bowen transcript inadmissible for trial purposes, apparently for hearsay reasons. Chase then filed a new summary judgment motion contending RCL could not establish damages because RCL had produced no evidence that the judgment was collectible. RCL filed a response memorandum. The trial court granted summary judgment dismissal, mainly reasoning RCL failed to produce evidence the judgment was collectible. RCL appealed.

ISSUES
The broad issue is whether the trial court erred in granting Chase summary judgment when deciding no material facts remained regarding collectibility and concluding RCL failed to show damage. The unique issue in this attorney malpractice case involving a law firm's failure to renew a judgment is who between the plaintiff and the defendant bears the burden of proving the judgment was collectible.
In a preliminary issue Chase contends RCL invited dismissal when it conceded to the trial court that an adverse evidentiary ruling "eviscerated" its case and that summary judgment was appropriate. RCL replies the "eviscerated" comment was taken out of context and that it did not concede the merits of its case. Under the invited error doctrine, a party may not set up an error at trial and then complain of it on appeal. In re Pers. Restraint of Thompson, 141 Wash.2d 712, 723, 10 P.3d 380 (2000). The doctrine applies when a party takes affirmative and voluntary action that induces the trial court to take an action that party later challenges on appeal. Id. at 723-24, 10 P.3d 380.
The doctrine does not apply here because RCL did not "set up" an error. When the verbatim of the summary judgment hearing is viewed in context, it is apparent RCL felt compelled by the trial court's negative evidentiary ruling to go along with resolution by summary judgment. RCL did not concede the merits of its case, and the trial court agreed on that point. It would be unfair to characterize RCL counsel's exasperated comment that the trial court's evidentiary ruling "eviscerated" RCL's case as constituting a waiver of the merits of their case.

ANALYSIS
In reviewing a summary judgment, the appellate court engages in the same inquiry as the trial court. Huff v. Budbill, 141 Wash.2d 1, 7, 1 P.3d 1138 (2000). Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); Huff 141 Wash.2d at 7, 1 P.3d 1138. "A material fact is one upon which the outcome of the litigation depends." Tran v. State Farm Fire & Cas. Co., 136 Wash.2d 214, 223, 961 P.2d 358 (1998) (citing Ruff v. King County, 125 Wash.2d 697, 703, 887 P.2d 886 (1995)). The appellate court reviews all facts and reasonable inferences in the light most favorable to the nonmoving party. Huff, 141 Wash.2d at 7, 1 P.3d 1138. And de novo review applies to issues of law. Id.
"To establish a claim for legal malpractice, a plaintiff must prove the following elements: (1) The existence of an attorney-client relationship which gives rise to a duty of care on the part of the attorney to the client; (2) an act or omission by the attorney in breach of the duty of care; (3) damage to the client; and (4) proximate causation between the attorney's breach of the duty and the damage incurred." Hizey v. Carpenter, 119 Wash.2d 251, 260-61, 830 P.2d 646 (1992) (citations omitted).
"Proximate cause consists of two elements: cause in fact and legal causation." Nielson v. Eisenhower & Carlson, 100 Wash.App. 584, 591, 999 P.2d 42 (citing City of Seattle v. Blume, 134 Wash.2d 243, 251, 947 P.2d 223 (1997), review denied, 141 Wash.2d 1016, 10 P.3d 1071 (2000)). "Cause in fact refers to the `but for' consequences of the act, that is, the immediate connection between an act and *309 an injury." Blume, 134 Wash.2d at 251-52, 947 P.2d 223. "The `but for' test requires a plaintiff to establish that the act complained of probably caused the subsequent disability." Daugert v. Pappas, 104 Wash.2d 254, 260, 704 P.2d 600 (1985). "Cause in fact is generally for the trier of fact to decide." Hetzel v. Parks, 93 Wash.App. 929, 939, 971 P.2d 115 (1999) (citing Daugert, 104 Wash.2d at 257, 704 P.2d 600).
"Legal causation rests on policy considerations determining how far the consequences of a defendant's act should extend." Blume, 134 Wash.2d at 252, 947 P.2d 223. "It involves the question of whether liability should attach as a matter of law, even if the proof establishes cause in fact." Id. at 252, 947 P.2d 223.
In the legal malpractice context, proximate cause boils down to whether the client would have fared better but for the attorney's negligence. Daugert, 104 Wash.2d at 257, 704 P.2d 600; Brust v. Newton, 70 Wash.App. 286, 293-94, 852 P.2d 1092 (1993). Unless the question involves a pure matter of law, such as whether the client would have prevailed on a statute of limitations issue, the trier of fact determines the existence of proximate cause. See Brust, 70 Wash.App. at 293-94, 852 P.2d 1092.
Our sole focus is the damage element. For discussion, we assume ample evidence to raise a genuine issue of material fact with regard to the other elements. At issue is whether material facts remain on the issue of the collectibility of the lost judgment.
In the legal malpractice context, "damages are the monetary value of an injury." 3 RODNEY E. MALLEN & JEFFREY M. SMITH, LEGAL MALPRACTICE § 20.1 (5th Ed.2000). "Injury" refers to the invasion of another's legal interest. Supra. "Damages" generally refers to monetary compensation to the injured party. Supra.
Here, the injury is rather apparent; it appears Chase missed the Arizona statute of limitations resulting in the irretrievable loss of RCL's judgment. The more difficult question relates to RCL's compensation for the injury. What are the damages in light of the depicted poor chance of recovery of any monetary sum for the damage sustained?
In this connection, Chase relies upon inapposite authority. In Sherry v. Diercks, 29 Wash.App. 433, 435-36, 628 P.2d 1336 (1981), the attorney's actions resulted in a default judgment against his client. Division One of this court affirmed the trial court's dismissal order reasoning the client could not prove causation because he had not shown he would have prevailed had he defended the suit. Id. at 437-38, 628 P.2d 1336. Here, the scenario is quite different; RCL had already obtained an enforceable judgment, which Chase let slip away.
Another case, from this Division, Ahmann-Yamane, LLC v. Tabler, 105 Wash. App. 103, 106-08, 19 P.3d 436, review denied, 144 Wash.2d 1011, 31 P.3d 1185 (2001), deals with an attorney's failure to bring a matter before the correct land use board. Similar to Sherry, the plaintiff failed to show he would have prevailed had the proper board heard the matter. Ahmann-Yamane, 105 Wash. App. at 115, 19 P.3d 436. Again, here the scenario is very different; RCL had already obtained an enforceable judgment for more than $85,000.
A third case, Bennett v. Maloney, 63 Wash.App. 180, 184, 817 P.2d 868 (1991), discusses a very different issue, valuation of a lost security interest. Here, the issue is damages arising from a lost enforceable judgment. Moreover, Bennett does not apply a summary judgment analysis.
Chase contends RCL must also prove the judgment was collectible. No Washington case is directly on point. In a recent Division Two case, a client sued an attorney for letting the statute of limitations run out on three promissory notes. Matson v. Weidenkopf, 101 Wash.App. 472, 475-77, 3 P.3d 805 (2000). In affirming a judgment for the client, Division Two noted, "that collectibility of the underlying judgment is a component of damages in a legal malpractice action." Matson, 101 Wash.App. at 484, 3 P.3d 805 (citing Tilly v. Doe, 49 Wash.App. 727, 732-33, 746 P.2d 323 (1987)) (footnote omitted).
"The measure of damages for legal malpractice is the amount of loss actually *310 sustained as a proximate result of the attorney's conduct." Matson, 101 Wash.App. at 484, 3 P.3d 805 (citing Tilly, 49 Wash.App. at 732, 746 P.2d 323; Martin v. Wash. Legal Servs., 43 Wash.App. 405, 412, 717 P.2d 779 (1986); Schirmer v. Nethercutt, 157 Wash. 172, 180-81, 288 P. 265 (1930)). As the Matson court further reasoned: "Courts consider the collectibility of the underlying judgment to prevent the plaintiff from receiving a windfall: `[I]t would be inequitable for the plaintiff to be able to obtain a judgment, against the attorney, which is greater than the judgment that the plaintiff could have collected from the third party[.]'" Matson, 101 Wash.App. at 484, 3 P.3d 805 (quoting Kituskie v. Corbman, 452 Pa.Super. 467, 682 A.2d 378, 382 (1996), aff'd, 552 Pa. 275, 714 A.2d 1027 (1998)).
RCL correctly notes no Washington case has addressed the precise question here; who bears the burden of proof on collectibility when the alleged damages are based on an otherwise enforceable judgment forfeited because of an attorney's negligent failure to renew the judgment. RCL contends we should follow jurisdictions placing the burden of proof on the negligent attorney, a minority view.
The majority of jurisdictions require the plaintiff to prove collectibility. See McKenna v. Forsyth & Forsyth, 280 A.D.2d 79, 83-84, 720 N.Y.S.2d 654, 657-58 (2001) (citing cases). The policy basis for this approach is to avoid awarding the aggrieved more than he or she would have recovered had the attorney not been negligent. Id. at 657. As one of these courts reasoned, "In a malpractice action, a plaintiff's `actual injury' is measured by the amount of money she would have actually collected had her attorney not been negligent." Klump v. Duffus, 71 F.3d 1368, 1374 (7th Cir.1995) (emphasis in original). Hypothetical damages beyond what the plaintiff would have genuinely collected from the judgment creditor "are not a legitimate portion of her `actual injury;' awarding her those damages would result in a windfall." Klump, 71 F.3d at 1374. Stated another way, these jurisdictions tend to view collectibility as a component of the plaintiff's prima facie case. See, e.g., Klump, 71 F.3d at 1374 (reasoning majority position on collectibility is consistent with burden of proof in negligence actions generally).
However, a growing minority of jurisdictions holds uncollectibility to be an affirmative defense that must be pleaded and proved by the negligent attorney. See, e.g., Power Constructors, Inc. v. Taylor & Hintze, 960 P.2d 20, 31-32 (Alaska 1998); Jourdain v. Dineen, 527 A.2d 1304, 1306 (Me.1987); Jernigan v. Giard, 398 Mass. 721, 500 N.E.2d 806, 807 (1986); Hoppe v. Ranzini, 158 N.J.Super. 158, 385 A.2d 913, 920 (1978); Ridenour v. Lewis, 121 Or.App. 416, 854 P.2d 1005, 1006 (1993); Smith v. Haden, 868 F.Supp. 1, 2 (D.D.C.1994). These minority jurisdictions reason generally that collectibility is a problem precisely because of the attorney's malpractice, therefore, the attorney should bear the burden and risk of proving uncollectibility. See Power Constructors, 960 P.2d at 31-32; Jernigan, 500 N.E.2d at 807; Kituskie, 714 A.2d at 1031.
Some minority jurisdiction courts reason the face value of an existing judgment is prima facie evidence of its intrinsic or settlement value, which the negligent attorney can overcome by pleading and proving uncollectibility. See Ridenour, 854 P.2d at 1006; Kituskie, 714 A.2d at 1031-32. The minority approach is increasingly endorsed in academic circles as a more plaintiff-friendly reform. See LAWRENCE E. KESSLER, ALTERNATIVE LIABILITY IN LITIGATION MALPRACTICE ACTIONS: ERADICATING THE LAST RESORT OF SCOUNDRELS, 37 San Diego L.Rev. 401 (2000); H. KOFFLER, LEGAL MALPRACTICE DAMAGES IN A TRIAL WITHIN A TRIALA CRITICAL ANALYSIS OF UNIQUE CONCEPTS: AREAS OF UNCONSCIONABILITY, 73 Marq. L.Rev. 40, 74 (1989); JOHN H. BAUMAN, DAMAGES FOR LEGAL MALPRACTICE: AN APPRAISAL OF THE CRUMBLING DIKE AND THE THREATENING FLOOD, 61 Temp. L.Rev. 1127, 1137 (1988).
Division Two of this court recently relied on Kituskie, a minority approach case, for the general proposition that the trial court could properly consider uncollectibility in determining legal malpractice damages. Matson, 101 Wash.App. at 484, 3 P.3d 805. However, the Matson court bypassed Kituskie's other holding, that the negligent attorney *311 bears the burden of proof with regard to uncollectibility. Compare Matson, 101 Wash.App. at 484, 3 P.3d 805 with Kituskie, 714 A.2d at 1031-32. In any event, which party bore the burden of proof was not at issue in Matson, which went on to determine sufficient evidence existed to support a finding for the plaintiff. Matson, 101 Wash.App. at 485, 3 P.3d 805.
In Tilly, Division One noted the split of authorities on collectibility and expressed a preference for the majority approach. Tilly, 49 Wash.App. at 732-33, 746 P.2d 323. But the precise issue in Tilly was the admissibility of evidence tending to show the client would not have collected a secured claim, not which party bore the burden of proof. Tilly, 49 Wash.App. at 732, 746 P.2d 323. Accordingly, no controlling authority exists in Washington as to which party bears the burden of proof when collectibility of a lost judgment is at issue.
Sound policy reasons support both the majority and minority positions on this issue. The damages awarded the plaintiff should accurately reflect his or her actual loss so as to avoid a windfall. Klump, 71 F.3d at 1374; McKenna, 720 N.Y.S.2d at 657. And, collectibility of a lost judgment must necessarily factor into a plaintiff's malpractice claim at some point. Matson, 101 Wash.App. at 484, 3 P.3d 805. Moreover, we recognize that uncertainty as to collectibility can be a byproduct of the lawyer's negligence, particularly when that negligence causes the loss of an enforceable judgment that otherwise could have been renewed for several years. Power Constructors, 960 P.2d at 31-32; Ridenour, 854 P.2d at 1006; Kituskie, 714 A.2d at 1031-32.
Nevertheless, we decline to adopt the minority position on collectibility, as it departs too far from general principles of negligence. Klump, 71 F.3d at 1374. Absent adequate proof of collectibility, the plaintiff could unjustifiably receive a windfall. Klump, 71 F.3d at 1374; McKenna, 720 N.Y.S.2d at 657.
However, genuine issues of material fact remain as to collectibility even under the majority approach. The pleadings and evidence in the file indicate: (1) the judgment had a face value of slightly more than $85,000; (2) Chase agreed to collect the judgment; (3) during its course of representation, Chase indicated the judgment would be very difficult to collect but stated also that settlement was a possibility; (4) the judgment creditors presently lack readily identifiable, attachable assets; (5) Mr. Bowen received considerable consulting fees from his brother, albeit irregularly; (6) the judgment creditors may have hid assets to prevent collection; (7) collection efforts in Arizona could have continued another five years had the judgment been renewed; and (8) Chase's failure to renew the judgment rendered it unenforceable in Arizona.
Viewing the evidence in a light most favorable to RCL, the nonmoving party, we cannot conclude the judgment was uncollectible as a matter of law. The judgment existed for a set amount and was enforceable in Washington and Arizona; those facts gave the judgment intrinsic settlement value. Ridenour, 854 P.2d at 1006. Chase never asserted during its representation that the judgment was entirely uncollectible; to the contrary, Chase indicated settlement was possible. While the settlement might be characterized as mere nuisance value, that characterization bears upon the amount of damages not damage or injury in the first place.
Clearly, but for Chase's failure to renew the judgment in Arizona, it would have remained enforceable for eventual collection or settlement. Power Constructors, 960 P.2d at 31-32; Kituskie, 714 A.2d at 1031-32. The failure to renew the judgment likely rendered it worthless, as compared to one of arguable reduced value. In sum, what RCL would have ultimately collected from the judgment is a genuine issue of material fact to be resolved at trial. Jernigan, 500 N.E.2d at 807. Thus, the trial court erred in granting summary judgment of dismissal. See Bishop v. Jefferson Title Co., 107 Wash.App. 833, 851, 28 P.3d 802 (2001), review denied, 145 Wash.2d 1025, 41 P.3d 483 (2002). The remedy is to remand for trial. See id. at 854, 28 P.3d 802.

*312 CONCLUSION
The trial court erred in granting Chase summary judgment. A material fact remains regarding the collectibility of the registered judgment before Chase's failure to renew the judgment. In light of this conclusion, we reject Chase's claim for attorney fees on appeal.
Reversed.
WE CONCUR: SWEENEY and KURTZ, JJ.
NOTES
[1] For ease of reference, we refer to the 16 appellants collectively as RCL.