IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

JAMES ANGELO,

               Appellant,

        v.

JERRY KINDINGER and RYAN
SWANSON & CLEVELAND,

               Respondent.

No. 82388-4-I

DIVISION ONE

UNPUBLISHED OPINION

COBURN, J. — James Angelo appeals the trial court's order granting summary judgment to Jerry Kindinger and Ryan Swanson & Cleveland (RSC) in Angelo's malpractice action and the award of attorney fees to RSC. Because we conclude there are genuine issues of material fact, we reverse the trial court's decisions to grant summary judgment, vacate the judgment entered on February 12, 2021, and remand for further proceedings.

FACTS

James Angelo served as the CEO of Touch Seattle, an event productions subsidiary of British company Touch Worldwide, from 2006 to 2012. When Angelo resigned from Touch, he agreed to provide the company with consulting services related to Microsoft's Worldwide Partner Conference ("WPC") in 2013. Angelo also agreed to settle a dispute with Touch regarding his stock redemption by securing the renewal of Touch's contract with Microsoft for WPC 2014 in exchange for Touch redeeming his stocks. During the 2013 drafting of the

consulting and stock redemption contracts, Angelo sought legal advice and representation from attorney Jerry Kindinger of the RSC law firm. In addition to serving as his attorney, Kindinger was Angelo's neighbor and friend.

In February 2014, Touch lost the Microsoft WPC 2014 contract Angelo had secured for the company. Touch Worldwide CEO Richard Bamford then refused to pay Angelo's stock redemption, arguing that the stock redemption contract required Touch to successfully complete their Microsoft contract through the end of WPC 2014. In October 2014, Kindinger initiated a demand for arbitration against Touch on behalf of Angelo.

According to Kindinger, the arbitration to settle the contract dispute should have been a "relatively simple, straightforward" matter, resolving a contract ambiguity of whether Angelo was entitled to the benefit of the redemption agreement. Kindinger told Angelo the arbitration would last about six months and cost $75,000 to $150,000.

During the course of arbitration, Kindinger sought the production of financial records from Touch. Touch objected on the basis that the documents were proprietary and Angelo could use them to compete against the company. On April 21, 2015, Kindinger wrote a letter on behalf of Angelo to the arbitrator stating that Touch was refusing to produce requested documents and assuring the arbitrator that Angelo was not a Touch competitor:

> [A]ttorneys for Touch incorrectly asserted that they declined to produce these documents because Mr. Angelo was a competitor. No support whatsoever was provided for this wholly inaccurate statement. Mr. Angelo is not in competition with Touch at all. In

fact, he has referred business to Touch since he left the company because he does not engage in the Touch related business area.

Angelo was copied on the letter. Touch produced the requested documents after the entry of a stipulated protective order which prevented the use of the materials outside of the arbitration.

The arbitration hearings were held in August and September 2015. Shortly before the hearings began, Kindinger learned from a potential arbitration witness that WPC 2016 was going out to bid. Kindinger shared this information with Angelo.

Angelo and his wife maintain that Kindinger encouraged Angelo to pursue the WPC 2016 contract. Angelo also states that Kindinger assured him there would not be an issue in applying for the bid. Angelo insists that he would not have bid without Kindinger's support or if he had been aware of the potential to compromise the pending arbitration. Kindinger concedes for purposes of summary judgment that he did encourage Angelo to compete for the WPC 2016 bid.[1]

Kindinger asserts that four days into the arbitration, Angelo told him he decided to bid. Kindinger acknowledged that he believed doing so would be a "colossal misjudgment" and would potentially risk an unfavorable outcome at arbitration. Kindinger explained in his deposition, "Given the arbitrator's history and the very aggressive approach of the Touch attorneys and Touch, I thought

---

[1] Other than the concession for the purposes of summary judgment, Kindinger maintains that he did not have a conversation with Angelo about Angelo's consideration of whether or not to bid between Kindinger notifying him of the opening and Angelo's decision to pursue it.

there was a distinct possibility it could sidetrack or get this arbitration off the tracks." Kindinger did not share these thoughts with Angelo.[2]

Kindinger decided not to disclose Angelo's bid to the arbitrator, concluding that disclosure to the arbitrator "could put [Angelo's] arbitration interest at severe risk" and no rule required him to make such a disclosure.

Angelo was awarded the WPC 2016 bid in mid-October. Angelo did not know that Touch was also competing for the WPC 2016 bid until after he submitted his proposal. Angelo did not believe his bid "had any bearing on what the arbitration was about," and did not know he was required to disclose it. Angelo had previously signed a non-compete agreement with Touch, but that restriction had expired in August 2013. The parties do not dispute that Angelo was legally entitled to compete with Touch at the time of the arbitration. Angelo maintains that he did not use any of the Touch materials obtained as part of the stipulated protective order but did rely on other Touch documents he retained from his time as CEO that he believed he was permitted to use.

On November 5, Angelo sent Kindinger an email asking if he could send the arbitrator the information related to his obtaining the WPC 2016 bid. Kindinger responded, "Suggestion: Not a good idea to communicate your news to [the arbitrator], but I am proud of you anyway. Kudos." Kindinger decided not to disclose to the arbitrator that Angelo won the bid, concluding that neither he nor Angelo had an obligation to do so.

---

[2] Angelo also disputes that Kindinger told Angelo that his decision to bid would cost him a lot of money and that he did not want anything to do with it.

On November 10, Angelo prevailed in the arbitration and was awarded the amount owed to him under the redemption agreement along with his attorney fees and costs (the "Merits Order"). The final award due to Angelo was $982,316.71.

In mid-December, Touch discovered that Angelo won the bid for WPC 2016. On December 21, Touch notified the arbitrator about Angelo's bid and asked for a reconsideration of the Merits Order. Touch accused Angelo of failing to disclose his competitive activities and requested discovery sanctions based on Kindinger's April 21 letter representing that Angelo was not competing with Touch. The arbitrator reopened the arbitration proceedings on December 22, and Angelo's merits award was frozen.

The sanctions hearings occurred in April 2016. Kindinger continued to represent Angelo during the sanctions hearing. During the course of the proceedings, Angelo engaged in several acts of misconduct. First, when Angelo was unable to produce a journal for submission as evidence, he manufactured a new journal, falsely represented it to be the original, and perjured himself during subsequent questioning about the evidence under oath. Kindinger did not know Angelo had falsified evidence or provided false testimony and promptly told the arbitrator once Angelo confessed to him what he had done.

Second, the arbitrator found that Angelo attempted to induce members of his WPC 2016 team to "conform their recollections to his," pertaining to the use of past Touch budgets.[3] Next, the arbitrator found that Angelo attempted to

---

[3] Angelo's April 2016 email to his business partner stated:

5

conceal violations of the stipulated protective order.[4]  Last, the arbitrator found

that Angelo failed to produce documents in connection with Touch's sanctions

motion, including at least one document that was required by a subpoena.[5]

On July 26, 2016, the arbitrator issued the sanctions order.  The arbitrator

granted Touch's motions for sanctions based, in part, on "determinations

hereinabove set forth," which included summaries of Angelo's misconduct

including determination number 12.  That determination stated:

> In his sworn testimony, as the first witness in his case-in-chief as part of the Merits Hearing, Mr. Angelo testified about his intention to leave the field of event production to pursue other non-event-production interests which, after an initial dispute with Richard Bamford, eventually led to the Redemption Agreement and other successor contracts in evidence in this arbitration. . . .
> Mr. Kindinger[] made assuring express and implied representations on Mr. Angelo's behalf to the Arbitrator by letter dated April 21, 2015—on which Mr. Angelo was "cc'd" and on which representations the Arbitrator reasonably relied, in overruling Respondents strong objections and opposition, that Mr. Angelo was not a competitor of Respondent and that there was no risk to Respondents would become one—so that all requested documents and Respondents' "keys to the kingdom" sensitive data in them (including WPC-related budgets, hours, profitability, etc.) requested by Mr. Angelo as necessary to discover and prove for his breach-

---

I will be saying that though I sent you some old budgets as background info, you and Shonda created our [WPC 2016] budget from scratch without the help of any other budgets.
If they try to dispute that . . . we might need you to come [to the sanctions hearing] on Tuesday.
Will that work for you?

[4] It was discovered during later sanctions proceedings that Angelo did not use any documents he received during the arbitration to compete against Touch, but he did use documents he had retained during his time as CEO in violation of his Touch employment agreement.

[5] The document was an email Angelo sent to his colleague stating, "I shouldn't have this but I do…it's the [statement of work] from ZED Ink WPC 2014."

of-implied-covenant claim should be produced to him—it was Mr. Angelo's continuing duty to immediately inform the Arbitrator and Respondents of his change of mind and intention. . . . Instead, Mr. Angelo kept silent and—except as to trusted Microsoft executives and select others he recruited for WPC2016 Team Angelo—Mr. Angelo secretly [sic] his changed intention and used information subject to the Protective Order to materially assist his qualification (e.g., timely submitting a budget within a set budgetary "cap") and ultimate success in the WPC 2016 "RFP" process.

Mr. Angelo's Merits Hearing testimony and Mr. Kindinger[]'s representations in his April 21, 2015 letter to the Arbitrator were continuing representations which became continuing misrepresentations—because they were not corrected and concealed actions were taken under the cover of those uncorrected representations, on which the Arbitrator reasonably relied until Respondents' papers of December 22, 2015 brought Mr. Angelo's misconduct to first light.

The arbitrator largely left in place the Merits Order, but to address Angelo's "highly serious wrongful conduct" ordered him to: (1) disgorge a percentage of his business profits related to WPC for a period of five years; (2) pay Touch's legal fees and costs incurred from the production of documents as part of the stipulated protective order, discovery of Angelo being named the producer of WPC 2016, and the subsequent motion for sanctions; and (3) forfeit his attorney fees and costs related to the Merits Order except those "solely applicable to [Angelo's] sustained contract-interpretation claim." The arbitrator continued the freeze on Angelo's award from the Merits Order. Additional hearings would be required to address the fees owed to Touch.

A few weeks later, in August 2016, Kindinger referred Angelo to a bankruptcy attorney.[6] Around the same time, Angelo disclosed to one of

---

[6] Angelo did file for bankruptcy in December 2016. Touch contested Angelo's bankruptcy filings, arguing that Angelo did not qualify for Chapter 13

Kindinger's RSC colleagues that Kindinger had been the one to say Angelo could bid for WPC and inquired whether Kindinger or the firm was responsible for the outcome of the sanctions hearing. After Angelo's inquiry, RSC resigned from Angelo's representation in the arbitration, citing a conflict of interest. In October 2016, Angelo retained new counsel.

The sanctions proceedings continued. Five years after Kindinger filed Angelo's demand for arbitration in October 2014, the arbitration concluded with a settlement agreement between Angelo and Touch in October 2019.[7]

In July 2019, Angelo filed a complaint against Kindinger and RSC alleging negligence. Angelo made several claims in the complaint and subsequent filings, some of which are not at issue in this appeal. Angelo claimed that Kindinger advised Angelo that he could apply for WPC 2016 and failed to inform him of the potential consequences of doing so, failed to notify the arbitrator that he decided to compete against Touch, and failed to advise Angelo to retain new legal counsel once a conflict of interest emerged during the sanctions hearing.

Angelo included with his complaint a declaration from legal malpractice expert attorney Robert Gould about Kindinger's deviations from the standards of care. Relevant to this appeal, Gould concluded that Kindinger and RSC failed to meet the standard of care when (a) Kindinger advised Angelo that he could

bankruptcy and his filing was made in bad faith. The case was dismissed in June 2017. The dismissal was later affirmed by the U.S. District Court.

[7] According to the agreement, in May 2019, the Arbitrator entered the Merits award for Angelo in the amount of $511,265, a sanctions award for Touch valued at $1,011,656 and the potential for an additional sanctions award which Touch claimed could reach $500,000. In the agreement, Angelo surrendered a Utah condominium and $100,000, in addition to other non-tangible assurances.

compete for WPC 2016 without informing him of "arbitration-related limitations"; (b) Kindinger failed to notify the arbitrator that the April 2015 representation was no longer accurate and did not tell Angelo of the need to notify the Arbitrator; and (c) Kindinger failed to advise Angelo to obtain new counsel or provide Angelo with relevant defenses to the sanctions hearing when Kindinger had an "interest in minimizing his own potential sanctions liability, and that interest conflicted with minimizing Mr. Angelo's potential liability."

Kindinger and RSC answered the complaint, denying that Angelo had any causes of action against them and claiming that any damages incurred to Angelo were the result of his own misconduct. In addition, Kindinger and RSC raised a counterclaim, stating that Angelo owed the firm $70,671.56 in legal fees. Soon thereafter, Kindinger and RSC filed a motion for summary judgment, arguing that Angelo failed to show proximate cause on any of his allegations, emphasizing that Angelo could not show that "but for" Kindinger's alleged malpractice Angelo would have had a better result in the arbitration. They also claimed they were entitled to summary judgment on RSC's counterclaim for unpaid attorney fees and costs.

At the summary judgment hearing, Kindinger and RSC emphasized Angelo's misconduct during the sanctions hearings, telling the court that Angelo failed to demonstrate proximate cause for his allegations because "[t]he sanctions order ultimately . . . was based on Angelo's illegal use of Touch's documents, and Angelo's attempted cover up." The court agreed, finding that the only potential breach would have been Kindinger not informing the arbitrator that

Angelo's circumstances had changed, but that Angelo could not show proximate cause because the sanctions were imposed "due to Mr. Angelo's willful, outrageous, egregious, misconduct . . . . That's not on his lawyer.  That's on Mr. Angelo."  The trial court found in favor of Kindinger and RSC on all claims, including RSC's counterclaim.  The trial court ruled that the final judgment due to RSC was $70,671.56 plus pre-judgment interest of $35,906.07 and fees and costs of $440, for a total award of $107,017.63.

Angelo appeals.

## DISCUSSION

We review summary judgment rulings de novo, considering the same evidence as the trial court and viewing all evidence in the light most favorable to the non-moving party.  Slack v. Luke, 192 Wn. App. 909, 915, 370 P.3d 49 (2016).  Under CR 56(c), summary judgment is proper where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.   Lavigne v. Chase, Haskell, Hayes & Kalamon, PS, 112 Wn. App. 677, 682, 50 P.3d 306 (2002).  "Only when reasonable minds could reach but one conclusion on the evidence should the court grant summary judgment." Versuslaw, Inc. v. Stoel Rives, LLP, 127 Wn. App. 309, 319, 111 P.3d 866 (2005).

Legal malpractice claims, similar to other torts, require a plaintiff to demonstrate four elements: "(1) The existence of an attorney-client relationship which gives rise to a duty of care on the part of the attorney to the client; (2) an act or omission by the attorney in breach of the duty of care; (3) damage to the

client; and (4) proximate causation between the attorney's breach of the duty and the damage incurred." Hizey v. Carpenter, 119 Wn.2d 251, 260–61, 830 P.2d 646 (1992).

In order to comply with an attorney's duty of care owed to a client, they "must exercise the degree of care, skill, diligence, and knowledge commonly possessed and exercised by a reasonable, careful, and prudent lawyer in the practice of law in this jurisdiction." Id. at 261.

To establish legal malpractice, a plaintiff must demonstrate that an attorney's negligence was the proximate cause of the injury. Smith v. Preston Gates Ellis, LLP, 135 Wn. App. 859, 864, 147 P.3d 600 (2006). Proximate cause includes both cause in fact and legal causation. Lavigne, 112 Wn. App. at 682. In the legal malpractice context, a plaintiff must show that "but for" the attorney's negligence the plaintiff would have obtained a more favorable outcome. Smith, 135 Wn. App. at 864. Legal causation relies on "'policy considerations determining how far the consequences of a defendant's act should extend.'" Lavigne, 112 Wn. App. at 683 (quoting City of Seattle v. Blume, 134 Wn.2d 243, 252, 947 P.2d 223 (1997)). Though a court determines proximate cause if the question involves a "pure matter of law," Lavigne, 112 Wn. App. at 683, proximate cause is "usually the province of the jury." Smith, 135 Wn. App. at 864.

Encouraging Angelo's Bid without Advising Him<br>of the Potential Consequences

*A. Duty and Breach*

At issue is whether Kindinger had a duty to advise Angelo of the potential

consequences of bidding on WPC 2016.

It is undisputed that Angelo could lawfully compete with Touch at the time of the arbitration. Kindinger argues that he had no duty to dissuade Angelo from doing something he had a lawful right to do. Angelo contends that the basis for Kindinger's liability is not whether it was *legal* for Angelo to compete, but rather, whether Kindinger violated the standard of care by proffering such advice.

Malpractice liability is premised on the conduct of the "reasonable" lawyer. Hizey, 119 Wn.2d at 262. The question is not whether Kindinger's advice related to a lawful act, but whether Kindinger "exercise[d] the degree of care, skill, diligence, and knowledge commonly possessed and exercised by a reasonable, careful, and prudent lawyer" when he encouraged Angelo to compete for the WPC bid without advising of the potential consequences. Id. at 261.

A "mere error[]" in an attorney's judgment cannot sustain a malpractice claim. Halvorsen v. Ferguson, 46 Wn. App. 708, 717, 735 P.2d 675 (1986). Washington has adopted the "attorney judgment rule" to determine when an error in an attorney's judgment breaches their duty of care to a client. Clark County Fire Dist. No. 5 v. Bullivant Houser Bailey P.C., 180 Wn. App. 689, 704, 324 P.3d 743 (2014). This rule provides:

> [A]n attorney cannot be liable for making an allegedly erroneous decision involving honest, good faith judgment if (1) that decision was within the range of reasonable alternatives from the perspective of a reasonable, careful and prudent attorney in Washington; and (2) in making that judgment decision the attorney exercised reasonable care.

Id. A plaintiff can defeat summary judgment on breach of duty for an error in

judgment by showing that the attorney's exercise of judgment was not within the range of reasonable choices from the perspective of a reasonable, careful and prudent attorney in Washington. Id. "If there is a genuine issue as to whether the attorney's decision was within the range of reasonable choices, the jury must be allowed to decide the issue." Id. at 706.

Angelo does not contend that, in isolation, Kindinger advising Angelo to bid was negligent. As Angelo's malpractice expert Gould explained, Kindinger is alleged to have failed to meet the minimum standard of care by advising Angelo "that he could compete with Touch *without informing* him of any arbitration-related limitations on him doing so despite Mr. Kindinger previously representing to the Arbitrator that Mr. Angelo did not compete with Touch in order to procure certain documents in discovery." (Emphasis added.) In other words, it is not the isolated fact of Kindinger encouraging Angelo to bid, it is doing so without advising of potential consequences under the circumstances of arbitration with Touch and the previous representation that Angelo was not competing with Touch. The question is whether Kindinger exercised reasonable care when he encouraged Angelo to bid without advising him that doing so was a "colossal misjudgment" that could risk the outcome from the arbitration.

Kindinger admitted that he was aware that Angelo bidding on WPC 2016 would create a "distinct possibility" to "sidetrack or get this arbitration off the tracks" and risk a favorable outcome of the arbitration. Kindinger said his fear was based on his knowledge of the arbitrator's history and the "very aggressive"

approach of Touch and their attorneys. Kindinger provides no tactical decision as to why he would not advise Angelo to these potential negative consequences.

Furthermore, Angelo presented expert testimony that Kindinger's conduct did not meet "the minimum standard of care of a reasonable State of Washington commercial litigation practitioner in the same or similar circumstances."

Angelo met his burden to defeat summary judgment by showing that a genuine issue of fact existed as to whether Kindinger acted as a reasonable attorney when he encouraged Angelo to bid on WPC 2016 but failed to inform him of the potential consequences of doing so under these circumstances.

*B. Proximate cause*

Kindinger contends that even if Angelo establishes Kindinger breached a duty related to his advice on the bid for WPC 2016, Angelo has failed to establish proximate cause.

The "but for" test of proximate cause requires "'an immediate connection between an act and injury.'" Versuslaw, Inc., 127 Wn. App. at 328 (quoting Blume, 134 Wn.2d at 251-52). A party must establish that a defendant's "act or omission" "probably caused the subsequent injury." Id.

Angelo claims that he only bid on WPC 2016 because Kindinger had endorsed the decision to do so, both in his encouragement and his failure to alert Angelo to the negative outcomes. For the purposes of summary judgment, we must assume this is true. To establish cause in fact, Angelo needed only to show that "but for" Kindinger's encouragement and failure to warn him of the

14

consequences, Angelo would have received a better outcome in the arbitration with Touch.

In this case, Angelo's "injury" was the sanctions order. He was therefore required to demonstrate some evidence that Kindinger's encouragement to bid without advising of the potential consequences probably caused the sanctions. We note that the arbitrator did not apportion the sanctions imposed to the various issues of misconduct during the arbitration. The record establishes that sanctions were imposed based on both Angelo's undisputed misconduct as well as the failure to inform the arbitrator that Angelo changed his mind and decided to compete with Touch.

Regardless of Angelo's own misconduct during the sanctions proceedings, Angelo has met his burden to defeat summary judgment, showing that there remains a genuine issue of material fact as to whether or not Kindinger's failure to advise Angelo of the possible negative consequences of bidding on WPC 2016 during the arbitration directly resulted, in at least some of, the sanctions imposed against Angelo.

Should this case proceed to trial, Kindinger will no doubt argue, as he did below, that the sanctions were caused by Angelo's misconduct and any of Kindinger's actions or inactions were too remote to satisfy legal causation. Because the question of proximate cause in this case does not involve a pure matter of law, it is best left to the province of a jury. A jury can decide whether Angelo proves proximate cause, and if so, what damages Angelo incurred as a result.

The trial court erred in granting summary judgment as to this claim because there are material issues of fact regarding duty and proximate cause.

Not Disclosing Angelo's WPC 2016 bid

*A. Duty and Breach*

Angelo contends that Kindinger was negligent by not disclosing to the arbitrator Angelo's changed circumstances regarding competing with Touch.

Kindinger counters that the April 2015 letter was accurate at the time written and Kindinger "made no representations as to what might happen in the future." Thus, he argues, he had no duty to disclose that Angelo changed his mind and did what he had a legal right to do: bid on WPC 2016. Kindinger mischaracterizes the evidence.

The arbitrator specifically noted that Angelo "testified about his intention to leave the field of event production to pursue other non-event-production interests which, after an initial dispute with Richard Bamford, eventually led to the Redemption Agreement and other successor contracts." Kindinger's letter to the arbitrator stated:

> [A]ttorneys for Touch incorrectly asserted that they declined to produce these documents because Mr. Angelo was a competitor. No support whatsoever was provided for this wholly inaccurate statement. Mr. Angelo is not in competition with Touch at all. In fact, he has referred business to Touch since he left the company because he does not engage in the Touch related business area.

The letter did not restrict the statement to any time frame. Nor is it realistic to believe that Touch would have been concerned about whether Angelo was a competitor only in April 2015, when the letter was written.

Kindinger next invokes the attorney judgment rule. Kindinger insists that he exercised his "best judgment" when he concluded that Angelo's decision to bid "did not involve any issues relevant to the arbitration." Contrary to Kindinger's conclusion, Angelo's decision to bid was in fact, relevant to the arbitration. Touch did not want to provide the discovery documents Angelo was requesting. Kindinger's April 2015 letter to the arbitrator was key in persuading the arbitrator to order Touch to release the proprietary documents under a protective order. Kindinger also argues that Angelo is unable to point to any evidence that "no reasonable Washington attorney would have made the same decision." However, Angelo's expert Gould opined that Kindinger "failed to meet the minimum standard of care of a reasonable State of Washington commercial litigation practitioner in the same or similar circumstances" when "Mr. Kindinger represented to the Arbitrator that Mr. Angelo did not compete with Touch and then (a) failed to notify the Arbitrator that this prior representation was no longer accurate and (b) failed to advise Mr. Angelo of the need to notify the Arbitrator of the same."

Gould referenced Rule of Professional Conduct (RPC) 3.3(a). This rule requires an attorney to "correct a false statement of material fact or law previously made to the tribunal by the lawyer." RPC 3.3(a)(1). RPC 3.3(c) further states that if a lawyer offers material evidence which he later "comes to know of its falsity" the lawyer is required to "promptly disclose this fact to the tribunal." Where such disclosure would be prohibited due to client confidentiality, the lawyer "shall promptly make reasonable efforts to convince the client to

17

consent to the disclosure." RPC 3.3(d). While ethical rules can be the basis for attorney discipline, they cannot support an independent cause of action for malpractice or be used as evidence of malpractice. Hizey, 119 Wn.2d at 263-66; Behnke v. Ahrens, 172 Wn. App. 281, 297, 294 P.3d 729 (2012). However, duty of care experts may still rely on the ethics rules as the basis for their opinions, so long as they address the "breach of the *legal* duty of care, and not simply the supposed breach of the ethics rules." Hizey 119 Wn.2d. at 265 (emphasis in original). Expert Gould did just that.[8]

Angelo asked Kindinger if he should tell the arbitrator about winning the WPC 2016 bid and Kindinger expressly advised him that he should not do so: "Not a good idea to communication your news to [the arbitrator]." "Misleading the court is never justified." Deutscher v. Gabel, 149 Wn. App. 119, 136, 202 P.3d 355 (2009).[9]

---

[8] Angelo also cites to Civil Rule 26(e)(2) as a potential basis of Kindinger's legal duty. CR 26(e)(2) states in part that, "A party who has responded to a request for discovery with a response that was complete when made is under no duty to supplement the response to include information thereafter acquired, except . . . [where] the party knows that the response though correct when made is no longer true and the circumstances are such that a failure to amend the response is in substance a knowing concealment." This rule is not applicable here, where Kindinger's April 2015 letter was not a submission to a request for discovery. Angelo also refers to Joyce v. Department of Corrections, 155 Wn.2d 306, 119 P.3d 825 (2005), for the position that "foreseeability of harm may, in itself, trigger a duty of care." Joyce does not impute a duty to a party wherever there may be foreseeable risk, but rather referred specifically to the "special relationship" that exists between an offender and the State. Joyce, 155 Wn.2d at 310. This case also is inapposite.

[9] Angelo assigns additional error to the trial court's finding that Kindinger's duty of confidentiality prohibited him from disclosing the bid. However, Kindinger, on appeal, does not raise this defense as to why he did not disclose.

Under these facts, the trial court erred in ruling as a matter of law Kindinger had no duty to disclose the change of circumstances.

*B. Proximate cause*

Even if a duty existed, Kindinger contends, Angelo's acts of misconduct broke "the chain of causation" and were the cause of the sanctions.

The Sanctions Order was clear that the sanctions were issued, at least in part, due to Kindinger's and Angelo's failure to update the arbitrator:

> [A]nd assuming that Mr. Angelo changed his intention, only after his lawyer, Mr. Kindinger, made assuring express and implied representations on Mr. Angelo's behalf to the Arbitrator by letter dated April 21, 2015 . . . on which representations that Arbitrator reasonably relied . . . that Mr. Angelo was not a competitor of Respondent and there was no risk to Respondents [he] would become one . . . *it was Mr. Angelo's continuing duty to immediately inform the Arbitrator and Respondents of his change of mind and intention* and, further, to immediately turn back all copies of all documents which Respondents had produced *. . . . Instead Mr. Angelo kept silent[.]*
>
>  . . .
>
> Mr. Kindinger's representations in his April 21, 2015 letter to the Arbitrator were continuing representations which became continuing misrepresentations—because they were not corrected and concealed actions were taken under the cover of those uncorrected representations, on which the Arbitrator reasonably relied until Respondents' papers of December 22, 2015 brought Mr. Angelo's misconduct to first light.
>
>  . . .
>
>  Based on . . . the determinations hereinabove set forth . . . [Touch's] motion for sanctions hereby granted[.]

(Emphasis added.)

The record does not indicate what portion of the sanctions were attributed to the nondisclosure as compared to Angelo's conceded misconduct. Nonetheless, the only question before us is whether Angelo provided enough

19

evidence to establish a genuine issue of material fact that Kindinger's alleged breach of duty—failing to disclose to the arbitrator—probably caused Angelo's injury. It is undisputed that the sanctions were, in part, based on the nondisclosure of the bid for WPC 2016 and that Kindinger did not disclose the information to the arbiter and also advised Angelo not to disclose the information to the arbiter. The fact that Angelo's conduct also caused sanctions does not insulate Kindinger from a claim of malpractice for his actions that led to the sanctions.

The trial court erred in ruling that there are no issues of material fact and granting summary judgment as a matter of law as to this claim.

<u>Kindinger's Conflict of Interest</u>

Angelo contends that the trial court overlooked evidence of Kindinger conflicts of interest during the sanctions proceedings. We agree.

At the summary judgment hearing, Angelo argued that Kindinger had a conflict of interest in representing Angelo starting on December 21, 2015, the date that the arbitrator became aware of Angelo's bid. The trial court disagreed, finding that Kindinger withdrew as Angelo's counsel when a conflict of interest arose, which was only at the point "when counsel found out that he had been a party to perjury and false evidence" during the sanctions proceedings.

Attorneys owe clients a duty of "undivided loyalty" and must avoid "any self-interest that would conflict with the interests of the client." <u>In re Marriage of Wixom & Wixom</u>, 182 Wn. App. 881, 884, 332 P.3d 1063 (2014). This principle is described in RPC 1.7(a) which states in part that "a lawyer shall not represent

a client if the representation involves a concurrent conflict of interest." One such concurrent conflict is when there is a "significant risk" that the representation will be limited by a personal interest of the lawyer. RPC 1.7(a)(2). The "interest of the lawyer" can be defined as a "financial or familial interest or an interest arising from the lawyer's exposure to culpability." Wixom, 182 Wn. App. at 898.

At the time the sanctions hearing was scheduled, Kindinger knew (1) he had previously represented that Angelo was not competing with Touch, (2) encouraged Angelo to bid on WPC 2016, (3) did not disclose to the arbitrator about the bid, and (4) advised Angelo also not to disclose the information to the arbitrator. At that point Kindinger was in direct conflict with Angelo as to who was to blame for the nondisclosure that eventually resulted in sanctions against Angelo. Despite this conflict, Kindinger did not advise Angelo of the conflict or withdraw from representing him in the arbitration. Angelo's expert Gould opined that Kindinger had a conflict at the moment the arbitrator ordered the sanctions hearings: "[Kindinger's] personal interests were to ensure that any sanction be levied upon his client, Mr. Angelo, rather than on himself; however, it was in his client's best interests for Mr. Kindinger to 'fess up' to what had happened so that a sanction (if any) was directed to Mr. Kindinger[.]" Expert Gould went on to explain that a "reasonable practitioner" in this situation would have informed Angelo of the conflict and the potential need for new counsel, informed the arbitrator of his error giving rise to the sanction, and made "the most effective arguments" for Angelo including those that related to properly apportioning blame.

For the reasons addressed above, we conclude that the trial court erred in ruling, as a matter of law, no conflict existed that supported a malpractice claim and granting summary judgment as to this claim.

As a result of Kindinger's conflicted representation, Angelo argues he is entitled to two possible remedies if successful at trial: (1) damages as a result of a successful legal malpractice claim, and/or (2) disgorgement of attorney fees as a result of Kindinger's purported violation of the RPCs.  We agree.

In his briefing, Kindinger does not respond to Angelo's conflict-of-interest and disgorgement arguments.  Instead, he focuses his argument as to why Angelo cannot recover attorney fees under the ABC Rule.[10]  Regardless of whether the ABC rule is applicable in this instance, Angelo's ability to seek damages against Kindinger is not limited to his attorney fees, but may include other damages incurred by Angelo as a result of any malpractice.  Such damages would be decided by a jury.

---

[10] Though Angelo did not assert the ABC Rule or brief it, he did not agree with respondents that it did not apply to the facts in his case.

> The ABC Rule is an equitable rule under which attorney fees are compensable as consequential damages in certain situations. The ABC Rule has three elements: '(1) a wrongful act or omission by A ... toward B ...; (2) such act or omission exposes or involves B …in litigation with C …; and (3) C was not connected with the initial transaction or event ..., viz., the wrongful act or omission of A toward B.  All three elements must be satisfied for the ABC Rule to apply.'

LK Operating, LLC v. Collection Grp., LLC, 181 Wn.2d 117, 123-24, 330 P.3d 190 (alterations in original) (citations and internal quotation marks omitted) (quoting Blueberry Place Homeowners Ass'n v. Northward Homes, Inc., 126 Wn. App. 352, 359, 110 P.3d 1145 (2005)).

Even if Angelo were to fail on his claim of malpractice related to Kindinger's conflict of interest, he may still be entitled to disgorgement of his attorney fees. Angelo raised disgorgement as a possible result of Kindinger's conflict of interest before the trial court. As a result of the trial court's finding that Kindinger did not represent Angelo with a conflict of interest, the trial court never addressed disgorgement.

A breach of an attorney's ethical duties may result in a denial or disgorgement of fees. Eriks v. Denver, 118 Wn.2d 451, 462, 824 P.2d 1207 (1992). "Disgorgement of fees is a reasonable way to discipline specific breaches of professional responsibility, and to deter future misconduct of a similar type. 'Such an order is within the inherent power of the trial court to fashion judgments.'" Behnke, 172 Wn. App. at 298 (quoting Eriks, 118 Wn.2d at 463). This is true regardless of whether there has been a finding of malpractice. See Eriks, 118 Wn.2d at 462-63. Whether an attorney has violated a rule of professional conduct is a question of law. Id. at 457-58. While courts cannot rely on the RPCs to impose malpractice liability, they may rely on the ethics rules in actions to recover attorney fees. Behnke, 172 Wn. App. at 297-98.

Based on the evidence available before the trial court, Angelo is entitled to pursue his disgorgement claim on the basis that Kindinger provided him with conflicted representation in violation of RPC 1.7.

<u>RSC's Counter-Claim for Attorney Fees</u>

RSC filed a counterclaim arguing that they were entitled to recover their unpaid attorney fees from representing Angelo in the amount of $70,671.56 plus

23

prejudgment and post-judgment interest.  The trial court granted summary

judgment on RSC's counterclaim and ordered an award totaling $107,017.63.

Angelo states that all of the fees that RSC seeks to recover were incurred

after April 2016, "well into the period of Kindinger's conflicted representation."

For the purposes of summary judgment, we must assume that is true.[11]

Kindinger does not address the delineation of fees in his briefing.

On appeal, the parties dispute whether the "accounts stated" doctrine[12]

applies to these fees.  We need not address this doctrine here because inferring

all evidence in favor of Angelo, the attorney fees at issue in this appeal were

connected to Kindinger's representation provided after the point of the alleged

conflict of interest.  Thus, RSC's award of attorney fees is intertwined with the

outcome of Angelo's claims on remand and must be reversed.

## CONCLUSION

There are genuine issues of material fact in this case that preclude

granting summary judgment in favor of Kindinger and RSC and dismissing

Angelo's claims.  Angelo may be entitled to damages or disgorgement as a result

of the alleged misconduct.  Based on the record before us, RSC's counterclaim

---

[11] Angelo's first bill after the commencement of the sanctions proceedings was January 11, 2016, at which time he owed RSC a balance of $39,524.78, some of which was related to invoices from the sanctions hearing.  Angelo made thousands of dollars in payments over the course of the sanctions hearing, payments which would, in total, have covered the balance due before the sanctions proceedings started.

[12] The doctrine of "account stated" applies when the creditor and the debtor manifest that a stated sum as an accurate computation of an amount due. Sunnyside Valley Irrig. Dist. v. Roza Irrig. Dist., 124 Wn.2d 312, 315, 877 P.2d 1283 (1994) (citing RESTATEMENT (SECOND) OF CONTRACTS § 282(1) (1981)).

for attorney fees is intertwined with Angelo's claims and cannot be decided as a matter of law in favor of RSC. We therefore reverse and remand to the trial court for further proceedings.

Coburn, J.

WE CONCUR:

Dwyer, J.    Appelwick, J.