# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 58055-1-II |
| Respondent, | |
| v. | |
| LARRY GILBERT EYER, | UNPUBLISHED OPINION |
| Appellant. | |

CRUSER, A.C.J. — Larry Eyer pleaded guilty to one count of communication with a minor for immoral purposes after exchanging messages online regarding a sexual encounter with someone he believed to be 11 years old but who was actually part of a sting operation. At sentencing, the superior court imposed a variety of community custody conditions. At issue in this appeal is condition 24, which initially prohibited "internet access or use, including email, without prior approval of the supervising [community custody officer (CCO)] and [t]reatment [p]rovider." Clerk's Papers (CP) at 43. Eyer objected to this condition, claiming that it was overbroad. Prompted by Eyer's request to modify the condition, the superior court added a provision to the condition stating that "[i]nternet may be used with monitoring software prior to use. Install prior to use with prior approval by CCO and treatment provider." Verbatim Rep. of Proc. (VRP) at 20. Eyer actively participated in crafting the language of the condition he now challenges on appeal. As such, Eyer invited this error and we decline to consider it.

Eyer also argues that because the superior court found him to be indigent at the time of sentencing, we should remand to the superior court with instructions to strike the following legal financial obligations (LFOs): $500 victim penalty assessment (VPA) and $100 DNA collection fee. The State does not respond to this claim. Eyer is correct that he is entitled to have the VPA and the DNA collection fee stricken from his judgment and sentence.

Accordingly, we affirm in part Eyer's sentence but we remand to the superior court with instructions to strike the VPA and the DNA collection fee.

## FACTS

### I. BACKGROUND

In January 2023, Larry Eyer was charged with one count of communication with a minor for immoral purposes after exchanging messages with someone on Instagram whom he believed to be an 11-year-old girl named "Emily." CP at 6. Eyer attempted to meet Emily in person and traveled to a Safeway parking lot to do so. When Eyer arrived, he was confronted by three individuals who worked with a group called Predator Poachers, who informed him that he had been communicating online with someone from the group who was posing as the fictitious Emily. Police arrived on the scene shortly thereafter.

After agreeing to waive his Fifth Amendment rights, Eyer admitted to the responding officer that he sent messages to Emily, telling her that he wanted her to touch his penis and saying that he wanted to touch "her breasts and vagina if she felt comfortable with that." *Id.*

Eyer pleaded guilty to communication with a minor for immoral purposes. Eyer's offender score was zero. *Id.* at 22. Pursuant to his plea agreement, Eyer and the State reached an agreed

sentencing recommendation which the State presented to the court. The parties' agreement recommended one month of confinement followed by one year of community custody.

## II. COMMUNITY CUSTODY CONDITIONS

While Eyer asked the superior court to follow the joint recommendation, he also objected to six of the community custody conditions. In response to Eyer's objections, the superior court struck two of the conditions, modified two conditions, and imposed the remaining two as proposed by the State. At issue before us are the interpretations and arguments surrounding condition 24.

Condition 24 initially read: "No internet access or use, including email, without prior approval of the supervising CCO and Treatment Provider." *Id.* at 43. At sentencing, defense counsel proposed that the court tailor this condition more narrowly "with appropriate filters and discussions with the CCO about what is appropriate internet use and what is not." VRP at 16. Counsel recommended the use of filters to "prohibit access to certain websites and filter search results." *Id.*

The following exchange occurred between the parties and the superior court:

> [DEFENSE COUNSEL]: . . . I submit that the Court could more narrowly tailor this condition with appropriate filters and discussions with the CCO about what is appropriate internet use and what is not. There are devices and apps that can be put on both computers and phones that would -- that would prohibit access to certain websites and filter search results that I think would be more narrowly tailored. You know, we live in a technological society, and not to have any access to online is, I think, beyond the scope of what's narrowly tailored to this particular offense.
>
> . . . .
>
> THE COURT: The monitoring software, though, No. 26, I do agree, 26 seems very overly broad, and so I would omit all but the last sentence, that the CCO is permitted to make random searches of who (unintelligible) phone, et cetera. So the last sentence would remain, but the rest of 26 I would omit.

And then -- I think that 24 can -- we can encompass 24 and 25. So I will omit 25. However, the no internet access or use, No. 24, including email, without prior approval of supervising CO and treatment provider, I think that should remain. And I know there are some monitoring software, something that you can install on your computer and on your phone. I would just like that included in 24, if that makes sense.

So, essentially, it comes down to internet access -- email, phone, et cetera -- is fine so long as you have your supervising CCO and treatment provider's approval, and there is some monitoring software installed prior to use, if that makes sense. And I think that was all of your concerns; right, Counsel?

[DEFENSE COUNSEL]: Yes, Your Honor. Thank you.
The internet may be used with -- may be used with monitoring software prior to use with prior approval. Okay.

THE COURT: And the monitoring software.

[DEFENSE COUNSEL]: I don't know if this is more expensive, but I wanted to –
Your Honor, I was thinking -- I just want monitoring software to also be able to include filters. I don't know -- I mean, I don't know what specific technology, so would it be okay if we interlineate, "to be used with monitoring software or filters," "and/or filters, " or something to that effect? I think they would probably use -- I think the software would actually be a filter, but I'm not really sure how -- you know, what -- what their terms are for these things.

THE COURT: I don't know what you mean by "filters."

[DEFENSE COUNSEL]: Filters -- well, in the case law, it talks about the availability of filters. I think they're via -- I think they're imposed via apps. But basically they filter out search engine responses.

THE COURT: Okay. All right. For instance, if he's viewing something that he's not supposed to be viewing, it would --

[DEFENSE COUNSEL]: Blocks it.

THE COURT: send an alert or -- okay.

[DEFENSE COUNSEL]: Yeah.

THE COURT: That's fine.

[PROSECUTOR]: Your Honor, here's the language I have. I can add -- I would have to draw another line in because I just don't have a lot of room, but "Internet may be used with monitoring software prior to use. Install prior to use with prior approval by CCO and treatment provider."

THE COURT: Yes. Yes. The prior approval is the (unintelligible). And you can attach the filters -- to include filters.

*Id.* at 16, 18-20.

At the end of this discussion, defense counsel did not express any disagreement with the language that the prosecutor crafted in response to defense counsel's discussion with the superior court. The court adopted the modification to condition 24 outlined above. The condition states: "Internet may be used [with] monitoring software installed to include filters prior to use [and with] prior approval by CCO and [treatment] provider." CP at 43.

### III. LEGAL FINANCIAL OBLIGATIONS

The superior court found Eyer to be indigent under RCW 10.101.010(3)(c). The court imposed two LFOs: a VPA fee amounting to $500 and a $100 DNA collection fee.

Eyer appeals, challenging community custody condition 24 and the imposed LFOs.

### ANALYSIS[1]

### I. INVITED ERROR DOCTRINE

A. Legal Principles

" 'Under the invited error doctrine, a party may not set up an error at trial and then complain of it on appeal.' " *Casper v. Esteb Enters., Inc.*, 119 Wn. App. 759, 771, 82 P.3d 1223 (2004) (quoting *Lavigne v. Chase, Haskell, Hayes & Kalamon, P.S.*, 112 Wn. App. 677, 681, 50 P.3d 306

---

[1] To the extent that Eyer's challenge is rooted in grammatical misreading of the sentence added to condition 24, we reject this claim.

(2002)). If "a party takes an affirmative and voluntary action that induces the trial court to take an action that a party later challenges on appeal," the doctrine applies. *Id.* The doctrine effectively prevents a party from requesting a specific action or instruction below and then complaining about it on appeal. *State v. Studd*, 137 Wn.2d 533, 546-47, 973 P.2d 1049 (1999).

B. Application

At sentencing, in regard to the community custody conditions involving internet usage, Eyer asked the superior court to "more narrowly tailor [these] condition[s] with appropriate filters and discussions with the CCO about what is appropriate internet use and what is not." VRP at 16. Eyer himself suggested requiring the use of filtering software. In response to Eyer's objection, the court omitted condition 25 as well as the majority of condition 26.

Based on Eyer's request and suggestions, the superior court modified condition 24. The court adopted Eyer's recommendation for condition 24 to include the use of monitoring software. The court explained that Eyer was permitted to access the internet but monitoring software must be installed prior to use. The court then confirmed with defense counsel that it had adequately addressed all of Eyer's concerns. Counsel replied: "Yes, Your Honor. Thank you. The internet may be used with -- may be used with monitoring software prior to use with prior approval." *Id.* at 18-19. Defense counsel then requested that condition 24 also include language regarding the use of filters. The parties and the court discussed the meaning and use of filters.

Based on the colloquy between the parties and the court, the State proposed that the following language be added to condition 24: " 'Internet may be used with monitoring software prior to use. Install prior to use with prior approval by CCO and treatment provider,' " and with the installation of filters. *Id.* at 20. Defense counsel agreed with the proposed language and did not

raise additional concerns. The court accepted the proposed modification to community custody condition 24.

This is a clear case of invited error. Eyer participated in crafting the language that he now complains is vague and overbroad. *Studd*, 137 Wn.2d at 546. As such, we reject Eyer's claim of error as it relates to community custody condition 24. *Id*. at 547-48.

## II. LEGAL FINANCIAL OBLIGATIONS

Effective July 1, 2023, courts may not impose the VPA or DNA collection fees on defendants who are indigent as defined by RCW 10.101.010(3)(a)-(c). RCW 10.01.160(3); RCW 43.43.7541(2); *see also* LAWS OF 2023, ch. 449, § 4. This change in the law took effect after Eyer's sentencing, so it applies to Eyer because this case is on direct appeal. *See State v. Ramirez*, 191 Wn.2d 732, 748-49, 426 P.3d 714 (2018). Likewise, Eyer is entitled to the benefit of the statutory amendment eliminating DNA fees for the same reason. *Id*. at 747.

The superior court found that Eyer is indigent as defined in RCW 10.101.010(3)(c), because the court found that at the time of sentencing, Eyer "receiv[ed] an annual income, after taxes, of 125 percent or less of the current federal poverty level." CP at 30. Because the trial court's finding of indigency entitles Eyer to relief on this issue, we remand this matter to the superior court to strike the VPA and the DNA collection fee from Eyer's judgment and sentence.

## CONCLUSION

We affirm the judgment in part and remand in part for the superior court to strike the $500 VPA and the $100 DNA collection fee.

No. 58055-1-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

CRUSER, A.C.J.

We concur:

LEE, J.

PRICE, J.