**Loretta KLUMP, Plaintiff–Appellee,**

**v.**

**J. David DUFFUS, Jr., Law Offices of Dixon, Duffus & Doub, a partnership, and Accident and Injury Referral Service, Defendants–Appellants.**

No. 94–3756.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 9, 1995.

Decided Dec. 18, 1995.

Rehearing and Suggestion for Rehearing En Banc Denied Jan. 12, 1996.

---

George Ripplinger (argued), Ripplinger & Associates, Belleville, IL, for Plaintiff-Appellee.

Richard E. Boyle (argued), Thomas R. Peters, Gundlach, Lee, Eggmann, Boyle & Roessler, Belleville, IL, for Defendants-Appellants.

Before CUMMINGS, WOOD, Jr., and EASTERBROOK, Circuit Judges.

CUMMINGS, Circuit Judge.

Loretta Klump retained J. David Duffus, Jr., a Greenville, North Carolina lawyer, to represent her in an Illinois lawsuit against the driver of the car that injured her. Mr. Duffus, however, did not file Klump's suit prior to the lapsing of the Illinois Statute of Limitations.[1] Klump subsequently sued Duffus, the Law Offices of Dixon, Duffus & Doub, and the Accident and Injury Referral Service[2] for legal malpractice. The jury awarded Klump $474,000: the amount it determined that she would have been awarded if Duffus had filed her claim against the driver in a timely manner. The defendants appeal that verdict, claiming *inter alia* that the district court erred in precluding the introduction of evidence as to Klump's ability to collect the hypothetical judgment. For the reasons discussed below, we reverse the judgment of the district court and remand the case for a new trial.

## BACKGROUND

Loretta Klump was injured in an automobile accident that occurred on January 26, 1987, near Troy, Illinois, when her vehicle was struck by a station wagon driven by Curt Eaves. Following the accident, the employment of Klump's husband required that the couple move to North Carolina. While there, Klump retained Duffus to represent her in an Illinois lawsuit against Eaves. Shortly thereafter, Klump and her husband moved to California and then returned to Troy, Illinois, where they still reside. Duffus failed to file Klump's lawsuit prior to the lapsing of the Illinois Statute of Limitations and as a result was sued by Klump for legal malpractice. The defendants admitted liability for all damages that were proximately caused by the automobile accident and Duffus's failure to timely file suit against Eaves.

Prior to trial, the district court granted Klump's motion in limine, deciding that no evidence could be presented to the jury regarding Eaves's ability to pay the hypothetical judgment. Defendants' offer of proof on the issue established that Eaves was unemployed, had no assets with which to satisfy a judgment against him, and had only a $25,000 insurance policy with respect to the accident. The action proceeded to trial on February 14, 1994, and a jury awarded Klump a judgment against the defendants in the amount of $424,000. The defendants appeal that judgment and we have jurisdiction over their appeal pursuant to 28 U.S.C. § 1291.

---

1. The record does not demonstrate whether Duffus filed Klump's lawsuit after the lapsing of the statute, or whether he failed to file it altogether.

2. The Accident and Injury Referral Service had referred the matter to Duffus.

## DISCUSSION

### 1. Personal Jurisdiction

■ The defendants initially challenge the judgment below on the ground that the district court did not properly have personal jurisdiction over them. The determination of personal jurisdiction is a question of law that we review *de novo*. *McIlwee v. ADM Indus., Inc.*, 17 F.3d 222, 223 (7th Cir.1994). A federal district court exercising diversity jurisdiction has personal jurisdiction over a nonresident "only if a court of the state in which it sits would have such jurisdiction." *Wilson v. Humphreys (Cayman) Ltd.*, 916 F.2d 1239, 1243 (7th Cir.1990), certiorari denied, 499 U.S. 947, 111 S.Ct. 1415, 113 L.Ed.2d 468.

■ The Illinois long-arm statute was amended in 1989 to provide that an Illinois court "may ... exercise jurisdiction on any ... basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." 735 ILCS 5/2–209(c). Paragraph 2–209(c) is now coextensive with the due process requirements of the United States Constitution. *FMC v. Varonos*, 892 F.2d 1308, 1310 n. 5 (7th Cir.1990). Thus "if the contacts between the defendant and Illinois are sufficient to satisfy the requirements of due process, then the requirements of both the Illinois long-arm statute and the United States Constitution have been met, and no other inquiry is necessary." *L.B. Foster Co. v. Railroad Serv., Inc.*, 734 F.Supp. 818, 822 (N.D.Ill.1990).

The defendants do not challenge the fact that Duffus's negligence caused harm to Klump. Instead, they focus upon the fact that the action against them is largely based upon Duffus's negligent *failure to act*, which they argue "occurred" in North Carolina. Therefore, they argue that Duffus committed no tort within Illinois boundaries and cannot be subject to jurisdiction there. In support of this position, they cite *Yates v. Muir*, 112 Ill.2d 205, 97 Ill.Dec. 394, 492 N.E.2d 1267 (1986). The court in *Yates* held that the allegedly negligent action of a Kentucky attorney who failed to file an appeal in Illinois did not "occur" in Illinois such that the attorney would be subject to Illinois jurisdiction.[3]

■ However, *Yates* was decided prior to the amendment of 735 ILCS 5/2–209 that extended the Illinois long-arm statute to the limit allowed by the due process standards of the United States Constitution. See *Varonos, supra*. Those standards have repeatedly been held to allow jurisdiction over a defendant who acts outside of a State's boundaries, but causes harm to an individual within the State, provided that it comports with "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95; *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528 ("So long as a commercial actor's efforts are 'purposefully directed' toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there."); *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790; *Calder v. Jones*, 465 U.S. 783, 788–790, 104 S.Ct. 1482, 1486–1487, 79 L.Ed.2d 804. Jurisdiction in such situations is proper where the defendant had "minimum contacts" with the forum State such that he had "fair warning" that he might be required to defend there, and where he has not presented a compelling case that it is unreasonable to do so. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–478, 105 S.Ct. 2174, 2182–2185, 85 L.Ed.2d

**3.** In *Yates*, a Kentucky attorney was hired to represent the plaintiff in asserting a disability retirement claim under the Civil Service Reform Act of 1978, 5 U.S.C. § 1101. The claim was filed with the Medical Director of the Office of Personnel Management in Washington, D.C., and all of the legal services associated therewith were performed exclusively in Kentucky. The claim "did not require the attorney to appear in any State Court or Federal Court in Illinois." *Id.* at 209, 97 Ill.Dec. at 396, 492 N.E.2d at 1269. The allegedly negligent act of the attorney was in failing to file in Illinois a timely appeal of the plaintiff's rejected claim. The only connection with Illinois was that regulations promulgated under the Civil Service Reform Act required that any appeal from the decision of the Medical Director be "filed within 20 days of the date of the decision, at the Chicago regional office." *Id.* at 207, 97 Ill.Dec. at 394, 492 N.E.2d at 1267.

528.[4] The requirement of "fair warning" meets due process standards by "giv[ing] a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490.

The "fair warning" requirement is met if the defendant "purposely avails itself of the privilege of conducting activities within the forum State thereby invoking the benefits and protections of the forum's laws." *Burger King*, 471 U.S. at 471–478, 105 S.Ct. at 2181–2185. Thus the proper focus of our inquiry is not Duffus's precise locale when the Illinois Statute of Limitations lapsed, but whether the contacts proximately resulting from his representation of Klump created a sufficient connection with Illinois such that he "personally availed" himself of the privilege of conducting activities there. Two recent Illinois cases are instructive on the issue.

In *Ores v. Kennedy*, 218 Ill.App.3d 866, 161 Ill.Dec. 493, 578 N.E.2d 1139 (1st Dist. 1991), an Illinois plaintiff sued an Illinois law firm for legal malpractice. The law firm impleaded a Texas attorney who had been retained on the plaintiff's behalf to admit an estate to probate in Texas. The Texas attorney had made telephone calls and written letters to the Continental Bank in Chicago and billed the plaintiffs directly for those contacts. The court held that the attorney had fair warning that he might be required to defend himself in Illinois because he "personally directed" his activities at Illinois resi-dents. *Id.* at 873, 161 Ill.Dec. at 498, 578 N.E.2d at 1144. Similarly, the court in *Culligan Int'l v. Wallace, Ross & Sims*, 273 Ill.App.3d 230, 208 Ill.Dec. 871, 650 N.E.2d 565 (4th Dist.1995), found that it was not unreasonable for a nonresident attorney to defend himself in Illinois in a malpractice action stemming from a West Virginia lawsuit. The court concluded that despite the fact that the lawsuit did not take place in Illinois, the attorney had "purposely availed" himself of Illinois because he had been in contact with his Illinois client in person, by telephone, and by mail. *Id.* at 232, 208 Ill. Dec. at 874, 650 N.E.2d at 568.

Duffus's relationship with regard to Illinois is as follows. He was retained to handle an Illinois lawsuit involving an automobile accident that occurred between two Illinois residents within the boundaries of Illinois. After hiring Duffus in North Carolina, and following a brief stay in California, Klump returned to Troy, Illinois, where she resided during much of Duffus's trial preparation. In the course of that preparation Duffus was in frequent telephonic and written contact with Klump, her treating physicians, her insurance carrier, and Eaves's insurance carrier, all of whom were located in Illinois. For that matter, the defendants have not notified us of any party relevant to the litigation who was not located in Illinois. It is clear that when Duffus agreed to represent Klump he was aware that the case would exclusively involve Illinois parties, Illinois law, and would take place in Illinois.[5]

We conclude that Duffus "[personally] availed [himself] of the privilege of conduct-

---

**4.** Due process standards under the Illinois Constitution similarly require that jurisdiction be asserted only when it is "fair, just, and reasonable to require a nonresident defendant to defend an action in Illinois, considering the quality and nature of the defendant's acts which occur in Illinois or which affect interests located in Illinois." *Rollins v. Ellwood*, 141 Ill.2d 244, 275, 152 Ill.Dec. 384, 398, 565 N.E.2d 1302, 1316 (1990).

**5.** Defendants argue that the case against Eaves could have been filed in federal court in North Carolina based upon diversity jurisdiction. Klump responds that she has at all times remained an Illinois resident, thereby preventing

diversity jurisdiction, because she retained her Illinois driver's license and has, at all relevant times, owned a home in Troy, Illinois. However, whether diversity of citizenship existed between Klump and Eaves does not alter the fact that the case would have been filed in Illinois because Eaves was not subject to personal jurisdiction in any other forum. We are simply unpersuaded by the defendants' attempt to argue that Duffus could have filed the case in North Carolina and *"in the event* that [Eaves] raised a [personal] jurisdiction issue and the court dismissed the case for lack of jurisdiction, [Klump] would have had one year in which to refile the case in Illinois." [Def. Reply Br. 2] (emphasis added).

ing business in [Illinois]." *Burger King,* 471 U.S. at 476, 105 S.Ct. at 2184. Thus it does not "offend traditional notions of fair play and substantial justice" to hold the defendants subject to jurisdiction there. *International Shoe Co.,* 326 U.S. at 316, 66 S.Ct. at 158. Furthermore, the defendants have not presented us with any evidence, much less a compelling case, that the exercise of Illinois jurisdiction is unreasonably burdensome upon them. See *Burger King,* 471 U.S. at 476–478, 105 S.Ct. at 2184–2185.

**2. Collectibility**

In a malpractice action against an attorney for failing to file his client's claim within the limitations period, the plaintiff essentially must present a "trial-within-a-trial," proving both the underlying claim against the hypothetical defendant and the claim against the negligent attorney. *Nika v. Danz,* 199 Ill.App.3d 296, 308, 145 Ill.Dec. 255, 264, 556 N.E.2d 873, 882 (4th Dist.1990). Here defendants conceded that Duffus was negligent and that the suit against Eaves would have been successful. Defendants do not challenge the jury's determination that $424,000 was the amount of the judgment Klump would have been awarded against Eaves. Rather, defendants argue that the district court erred in precluding the introduction of evidence regarding Eaves's ability to pay that judgment. We will order a new trial based on erroneously excluded evidence only if we determine that the district court abused its discretion in excluding that evidence. *Jackson v. Bunge Corp.,* 40 F.3d 239, 246 (7th Cir.1994).

The district court's decision to exclude the collectibility evidence was largely based upon its interpretation of *Goldzier v. Poole,* 82 Ill.App. 469 (1899). The district court read *Goldzier* to allow a plaintiff in a malpractice action a full recovery of the amount of the underlying hypothetical judgment if the plaintiff could prove that any portion of that judgment would have been collectible:

"To establish damages that would have been recovered on the underlying claim, Illinois law requires the plaintiff to prove 'what the actual injury is, by showing validity of the demand which he has lost, and

the fact that it would *in part or in whole* have been realized had the attorney not been negligent.' *Goldzier v. Poole.*" [Memorandum and Order dated Sept. 10, 1993, p. 2].

In the district court's view, *Goldzier* "holds that plaintiff can satisfy her burden by showing that at least part of any judgment against Eaves would have been recovered." *Id.*

We believe the district court's focus on the *Goldzier* phrase "in part or in whole" was too narrow, leading it to a result that was beyond the holding of the *Goldzier.* That case involved two attorneys—Goldzier and Rodgers—who negligently failed to appear in court on April 20, 1893, when the case of Poole—their client—against the Bouton Foundry Company was called. Their failure to appear resulted in the dismissal of Poole's case for want of prosecution. On July 1, 1893, the Bouton Foundry Company became insolvent. Poole subsequently sued Goldzier and Rodgers and was awarded a judgment against them that reflected the amount of the hypothetical judgment Poole would have been awarded against the Bouton Foundry Company had Goldzier and Rodgers properly appeared in court. Goldzier and Rodgers appealed the judgment and the Illinois appellate court remanded the case. The court held that Poole had the burden to prove that the Bouton Foundry Company was not insolvent on April 20, 1893, the date of the attorneys' negligence.

The sentence of *Goldzier* relied upon by the district court, when read in full, states, "[w]e are inclined to adopt that rule as the safer and supported by better authority, which, permitting a recovery beyond nominal damages only to the extent of actual injury, makes it the burden of the plaintiff to establish his measure of damages, and to show what the actual injury is, by showing the validity of the demand which he has lost, and the fact that it could in part or in whole have been realized had the attorney not been negligent." *Goldzier* at 472.

Thus the holding of *Goldzier* can properly be stated as follows: in malpractice actions against attorneys who negligently cause their client not to be awarded a judgment to which

that client was entitled, the plaintiff must prove that the hypothetical defendant was solvent in order to receive *more than mere nominal damages.*

The court in *Goldzier* never reached the issue before us: the *extent* of actual damages to which a plaintiff is entitled if the hypothetical defendant is only partially able to satisfy a judgment against him. However, in its holding the court did use the phrase "only to the extent of actual injury." *Id.* Later in the opinion the court again stated that "the right to substantial damages, as are here awarded, should depend upon *the extent of the actual injury." Id.* (emphasis added). In a malpractice action, a plaintiff's "actual injury" is measured by the amount of money she would have actually *collected* had her attorney not been negligent. A plaintiff is to be returned only to the same position she would have occupied had the tort not occurred. Had Duffus filed Klump's case in a timely manner and thus not committed the tort, Klump's position would have been that of a person possessing a $424,000 judgment against an individual who was unemployed, had no assets, and had only a $25,000 insurance policy. Hypothetical damages above the amount that Klump could genuinely have collected from Eaves are not a legitimate portion of her "actual injury;" awarding her those damages would result in a windfall. Thus we believe that the district court was incorrect to state that a plaintiff is entitled to the full amount of an underlying judgment if she can only prove that the hypothetical defendant was able to pay one dollar of it.

Our interpretation of *Goldzier* is consistent with that of other Illinois courts. See *Sheppard v. Krol,* 218 Ill.App.3d 254, 260, 161 Ill.Dec. 85, 89, 578 N.E.2d 212, 216 (1st Dist. 1991) ("Plaintiff must show that but for his lawyer's negligence he would have *recovered* [from the hypothetical defendant].") (emphasis added); *Kohler v. Woollen, Brown &*

*Hawkins,* 15 Ill.App.3d 455, 458, 304 N.E.2d 677, 678 (4th Dist.1973) ("In an action for legal malpractice a plaintiff has the burden of showing the validity of the demand which he lost and that it *could have been realized* if the attorneys had not been negligent.") (emphasis added). Moreover, it is consistent with the position of virtually every other court that has addressed the collectibility issue. See, *e.g., Fernandes v. Barrs,* 641 So.2d 1371, 1374 (Fla.Dist.Ct.App.1994) ("The general rule is that the client/plaintiff in a legal malpractice action must prove both that a favorable result would have been achieved in the underlying litigation ... and that any judgment which could have been recovered would have been collectible."); *Haberer v. Rice,* 511 N.W.2d 279, 285 (S.D. 1994) (holding that a required element of a plaintiff's malpractice claim is "the amount of the judgment and that the judgment was collectible").[6]

While we are mindful that a minority of courts have placed the burden on the defendant to prove the uncollectibility of the underlying judgment,[7] we conclude that the burden is more properly placed on the plaintiff to prove the amount she would have actually collected from the original tortfeasor as an element of her malpractice claim. This is the position taken by the majority of courts and is more consistent with a plaintiff's burden of proof in negligence actions generally. See Joseph H. Koffler, *Legal Malpractice Damages in a Trial Within a Trial—A Critical Analysis of Unique Concepts: Areas of Unconscionability,* 73 Marq. L.Rev. 40, 52 (1989) ("To predicate an award of damages upon both the requirement that a judgment would have been recovered and that it would have been collectible ... requires a showing of causation ... that is conceptually no different from that required in negligence cases generally.").

---

6. See also *Payne v. Lee,* 686 F.Supp. 677, 678 (E.D.Tenn.1988); *Sitton v. Clements,* 257 F.Supp. 63, 67 (E.D.Tenn.1966); *Little v. Matthewson,* 114 N.C.App. 562, 568, 442 S.E.2d 567, 571 (1994); *Alva v. Hurley, Fox, Selig, Caprari & Kelleher,* 156 Misc.2d 550, 593 N.Y.S.2d 728, 730 (1993); *Cosgrove v. Grimes,* 774 S.W.2d 662, 665 (Tex.1989); *Eno v. Watkins,* 229 Neb. 855, 856, 429 N.W.2d 371, 372 (1988); *Jourdain v. Dineen,*

527 A.2d 1304, 1306 (Me.1987); *Whiteaker v. State,* 382 N.W.2d 112, 114 (Iowa 1986); *Hoppe v. Ranzini,* 158 N.J.Super. 158, 168, 385 A.2d 913, 919 (1978); *McDow v. Dixon,* 138 Ga.App. 338, 342, 226 S.E.2d 145, 147 (1976).

7. See, *e.g., Jourdain v. Dineen,* 527 A.2d 1304 (Me.1987).

■ Finally, we note that the district court stated that its position on collectibility was consistent with the concerns of public policy, which Judge Stiehl believed discourages allowing defendants "to benefit from the fortuity that a judgment debtor might not have been able to pay all of plaintiff's damages." [Memorandum and Order dated Sept. 10, 1993, p. 3].[8] However, compensatory damages exist only to compensate the plaintiff, not to punish the defendant. If Klump could not have collected a full judgment from Eaves, then Duffus's negligence did not injure her in that amount; she simply could not lose what she could never have had.[9]

### CONCLUSION

The district court's assertion of personal jurisdiction over the defendants was proper. However, the court abused its discretion by precluding the introduction of evidence regarding Eaves's financial ability to pay a judgment against him. The case is remanded for a new trial where both parties should be allowed to present evidence as to Eaves's employment status, financial position, asset ownership, insurance coverage, and all other evidence relevant to determining the amount of money that Klump would have actually collected from Eaves had Duffus filed Klump's Illinois lawsuit in a timely manner.

---

**8.** The district court also based its decision upon the fact that Klump would have had twenty years to collect any judgment against Eaves. See 735 ILCS 5/12–108, 5/13–218. Therefore, in the district court's view, Eaves's current ability to pay the judgment was irrelevant because his financial position could change during the twenty-year period. However, this argument overlooks the fact that the judgment against Eaves would have been immediately dischargeable in a bankruptcy proceeding. See *Perez v. Campbell*, 402 U.S. 637, 648, 91 S.Ct. 1704, 1710, 29 L.Ed.2d 233

(" '[O]ne of the primary purposes of the Bankruptcy Act' is to give debtors 'a new opportunity in life and a clean field for future effort, unhampered by the pressure and discouragement of pre-existing debt' ... Congress intended this 'new opportunity' to include freedom from most kinds of pre-existing tort judgments.").

**9.** Because we are remanding the case for a new trial based on the collectibility issue, we need not address defendants' other issues on appeal.