# IN THE SUPREME COURT, STATE OF WYOMING

## 2024 WY 43

**APRIL TERM, A.D. 2024**

**April 22, 2024**

PATRICIA KAPPES, individually and
as Personal Representative of the Estate
of Lula M. Tanner,

Appellant
(Plaintiff/Counter-Defendant),

v.                                                                      S-23-0146

DIANA RHODES and RHODES LAW
FIRM, LLC,

Appellees
(Defendants/Counter-Plaintiffs).

*W.R.A.P. 11 Certified Questions*
*from the District Court of Laramie County*
The Honorable Thomas T.C. Campbell, Judge

*Representing Appellant:*
    William R. Fix, Fix Law Office, Kealakekua, Hawaii.

*Representing Appellees:*
    Anna Reeves Olson, Long Reimer Winegar, LLP, Casper, Wyoming.

*Before FOX, C.J., and KAUTZ, BOOMGAARDEN, GRAY, and FENN, JJ.*

*\* Justice Kautz retired from judicial office effective March 26, 2024, and, pursuant to Article 5, § 5 of
the Wyoming Constitution and Wyo. Stat. Ann. § 5-1-106(f) (2023), he was reassigned to act on this
matter on March 27, 2024.*

NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.

**KAUTZ, Justice.**

[¶1]    In legal malpractice cases, the client claims an attorney's negligence caused her damages.  In some cases, like this one, the client alleges her damages are the loss of a legal action against a defendant (hereinafter referred to as the "underlying action").  In such cases, the client must show a "case within a case," that is, that she would have obtained a favorable judgment in the underlying action but for the attorney's negligence.  The First Judicial District Court in Laramie County, Wyoming, certified four questions to this Court concerning what role, if any, the collectibility of the judgment in the underlying action plays in legal malpractice cases in Wyoming.  We conclude the collectibility of the judgment is an essential part of the causation/damages element of a legal malpractice action which, like all elements of a civil cause of action, the client has the burden to prove by a preponderance of the evidence.

## CERTIFIED QUESTIONS

[¶2]    We agreed to answer the following questions:

1.  Is the issue of collect[i]bility ("Collectibility Doctrine") o[f] a judgment relevant for a jury to consider in a legal malpractice case in Wyoming? That is, is collectib[i]lity a recognizable and proper element of damages in legal malpractice cases in Wyoming?

2.  If [the answer to the first question is] yes, which party bears the burden of pro[ving] the underlying judgment would have been collectible?

3.  If the defendant bears the ultimate burden of proof as to collect[i]bility, must it be pled as an affirmative defense?

4.  If recognized, is the Collectibility Doctrine available as a defense to an attorney who has admitted liability?

## FACTS

[¶3]    Although the certified questions present questions of law, we provide a brief background of the facts for context.  We take the facts primarily from the district court's certification order which, in turn, took the facts largely from our previous decision in this matter concerning an unrelated issue.  *See Kappes v. Rhodes*, 2022 WY 82, 512 P.3d 31 (Wyo. 2022).

[¶4]    Lula M. Tanner, age 90, resided at Deseret Health and Rehab at Rock Springs, LLC (Deseret).  Deseret provided health care services.  On January 30, 2015, Ms. Tanner began taking a new medication prescribed by her primary care physician.  Her condition worsened

1

and, about a week later, on February 5, 2015, an ambulance was called to take Ms. Tanner to the hospital. Ms. Tanner died a few hours later in the hospital's emergency department. In January 2016, Ms. Tanner's daughter, Patricia Kappes, contacted Diana Rhodes at the Diana Rhodes Law Firm, LLC, for a legal opinion concerning whether she had any legal recourse for her mother's death against any of her mother's health care providers. Ms. Rhodes agreed to "investigate" the matter. On February 9, 2017, Ms. Kappes called Ms. Rhodes for an update and noted her concern about the statute of limitations, which she believed was three years. Ms. Rhodes stated they had two years from Ms. Tanner's death on February 15, 2015, to file suit. Ms. Kappes corrected Ms. Rhodes, stating Ms. Tanner died on February 5, 2015. Thereafter, Ms. Rhodes discovered she had mis-calendared the end of the limitations period as February 15, 2017, rather than February 5, 2017.

[¶5]    Ms. Kappes retained new counsel and successfully petitioned the probate court to be named as the personal representative of her mother's estate. She then filed a legal malpractice complaint against Ms. Rhodes and her law firm (hereinafter collectively referred to as Ms. Rhodes) on behalf of herself and as personal representative of her mother's estate. She alleged Ms. Rhodes was negligent by failing to timely file an application with the Wyoming Medical Review Panel and a wrongful death complaint against Ms. Tanner's healthcare providers on behalf of Ms. Tanner's estate. She claimed she was entitled to "any and all damages resulting from the wrongful death of [Ms.] Tanner which could and should have been recovered by [Ms. Rhodes] on behalf of [Ms.] Kappes, the Estate of Lula M. Tanner, as well as each and every heir of [Ms.] Tanner." In her answer, Ms. Rhodes admitted she had failed to timely file an application with the Medical Review Panel and a wrongful death complaint, but claimed Ms. Kappes "will be unable to establish the case-within-a-case standard required for professional malpractice actions."

[¶6]    Ms. Rhodes filed a motion for summary judgment. Relevant here, she argued that to succeed on her legal malpractice claim, Ms. Kappes had to show that had Ms. Rhodes timely filed a wrongful death complaint, Ms. Kappes would have received a judgment in her favor, and the judgment would have been collectible. According to Ms. Rhodes, Ms. Kappes could not show any judgment she obtained against Deseret would have been collectible because Deseret's parent company abandoned its nursing homes, including Deseret, in May 2015; Deseret was administratively dissolved in Wyoming on March 10, 2016; and Deseret's insurance policy, which only covered claims made during the policy's term, was cancelled on April 27, 2015. Ms. Rhodes also relied on the opinion of her legal expert, who opined that based on his experience litigating against Deseret, it was not reasonably probable that even if Ms. Rhodes had timely filed suit against Deseret and obtained a favorable judgment, the judgment would have been collectible. Similarly, with respect to the paramedics who transported Ms. Tanner to the hospital on the day of her death, Ms. Rhodes argued Ms. Kappes failed to provide any expert testimony that had Ms. Rhodes timely filed suit against them, any favorable judgment obtained would have been collectible.

2

[¶7]    Ms. Kappes opposed summary judgment, claiming Wyoming law did not require her to prove any judgment she would have obtained against Ms. Tanner's medical providers in the underlying action would have been collectible.  Even if collectibility was relevant in a legal malpractice case, Ms. Kappes argued it was an affirmative defense which had to be pled and proved by Ms. Rhodes.  Ms. Kappes followed up her response with a motion in limine to preclude Ms. Rhodes or any of her trial witnesses from mentioning or referring to the collectibility of the underlying judgment because collectibility was not an element of a legal malpractice claim in Wyoming.  She again claimed that if collectibility was relevant, it was an affirmative defense which Ms. Rhodes failed to plead in her answer and argued Ms. Rhodes' admission of liability precluded her from raising the collectibility issue.

[¶8]    The district court ultimately issued an order certifying the four questions above to this Court pursuant to Rule 11.01 of the Wyoming Rules of Appellate Procedure, which allows us to answer questions of law that "may be determinative of the cause then pending in the certifying court . . . and concerning which it appears there is no controlling precedent in the decisions of the supreme court."  We agreed to answer the certified questions and the parties briefed them.

## DISCUSSION

[¶9]    This Court has not had an occasion to address what role, if any, the Collectibility Doctrine plays in legal malpractice actions in Wyoming.  However, other jurisdictions have addressed the issue.  We begin our discussion with a review of the decisions from these jurisdictions.  We will then review our legal malpractice jurisprudence and answer the certified questions.

### *Collectibility Doctrine—Other Jurisdictions*

[¶10]  With one exception, the jurisdictions which have addressed the applicability of the Collectibility Doctrine in legal malpractice cases have determined the collectibility of the judgment in the underlying action is a relevant consideration.  *See, e.g., Power Constructors, Inc. v. Taylor & Hintze*, 960 P.2d 20, 31-32 (Alaska 1998); *DiPalma v. Seldman,* 33 Cal.Rptr.2d 219, 222-23 (Cal. 1994); *LeHouillier v. Gallegos,* 434 P.3d 156, 160 (Colo. 2019); *Smith v. Haden*, 868 F.Supp. 1, 2 (D.D.C. 1994); *McDow v. Dixon,* 226 S.E.2d 145, 147 (Ga.Ct.App. 1976); *Klump v. Duffus*, 71 F.3d 1368, 1374 (7th Cir. 1995) (applying Illinois law); *Clary v. Lite Machines Corp.,* 850 N.E.2d 423, 439 (Ind. Ct. App. 2006); *Whiteaker v. State*, 382 N.W.2d 112, 114-15 (Iowa 1986); *Jernigan v. Giard*, 500 N.E.2d 806, 807 (Mass. 1986); *Jourdain v. Dineen,* 527 A.2d 1304, 1306 (Me. 1987); *Teodorescu v. Bushnell, Gage, Reizen & Byington,* 506 N.W.2d 275, 278 (Mich.Ct.App. 1993); *Rorrer v. Cooke,* 329 S.E.2d 355, 369 (N.C. 1985); *Eno v. Watkins,* 429 N.W.2d 371, 372-73 (Neb. 1988); *Carbone v. Tierney,* 864 A.2d 308, 317-18 (N.H. 2004); *Lindenman v. Kreitzer*, 775 N.Y.S.2d 4, 8 (N.Y. 2004); *Paterek v. Petersen & Ibold,* 890

3

N.E.2d 316, 320-21 (Ohio 2008); *Kituskie v. Corbman*, 714 A.2d 1027, 1030 (Pa. 1998); *Haberer v. Rice,* 511 N.W.2d 279, 285 (S.D. 1994); *Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Rsch. Corp.,* 299 S.W.3d 106, 112 (Tex. 2009); *Smith v. McLaughlin,* 769 S.E.2d 7, 17-18 (Va. 2015); *Schmidt v. Coogan*, 335 P.3d 424, 427-28 (Wash. 2014). The primary rationale provided by these courts for why the collectibility of the underlying judgment is relevant in a legal malpractice action is that limiting a client to the amount that is collectible accurately reflects what the client lost due to the attorney's negligence and prevents the client from collecting more from the attorney than she would have collected had the attorney not been negligent. As the Ohio Supreme Court explained,

> [a] judgment amount that is shown to be collectible provides a realistic picture of what a malpractice claimant actually lost. To find collectibility of the lost judgment irrelevant would "go beyond the usual purpose of tort law to compensate for loss sustained and would give the client a windfall opportunity to fare better as a result of the lawyer's negligence than he would have fared if the lawyer had exercised reasonable care." David A. Barry, *Legal Malpractice in Massachusetts: Recent Developments* (1993), 78 Mass.L.Rev. 74, 81-82. The finest attorneys in the world cannot coax blood from a stone.

*Paterek*, 890 N.E.2d at 320. *See also, Whiteaker*, 382 N.W.2d at 115 ("'[T]he measure of the client's damages [in a legal malpractice action] is limited to the amount he would have actually recovered by way of a satisfied judgment [or] . . . otherwise the client would be placed in a better position as a result of the lawyer's malpractice than he would have been in had the attorney not been negligent'" (quoting *Beeck v. Aquaslide 'N' Dive Corp.*, 350 N.W.2d 149, 160-61 (Iowa 1984))); *Kituskie*, 714 A.2d at 1030 ("Actual losses in a legal malpractice action are measured by the judgment the plaintiff lost in the underlying action and the attorney who negligently handled the underlying action is the party held responsible for the lost judgment. However, . . . it would be inequitable for the plaintiff to be able to obtain a judgment against the attorney which is greater than the judgment that the plaintiff could have collected from the third party; the plaintiff would be receiving a windfall at the attorney's expense.") (internal quotation marks and citation omitted).

[¶11] While the jurisdictions addressing the issue are united in holding that the collectibility of the underlying judgment is a relevant consideration in legal malpractice cases, they are split as to which party bears the burden of proving a judgment would have been collectible. A slight majority of the jurisdictions places the burden on the client to prove she could have collected the underlying judgment. *See, e.g., DiPalma,* 33 Cal.Rptr.2d at 222-23; *LeHouillier*, 434 P.3d at 160, 162; *McDow*, 226 S.E.2d at 147; *Klump*, 71 F.3d at 1374; *Whiteaker*, 382 N.W.2d at 114-15; *Jernigan*, 500 N.E.2d at 807; *Rorrer*, 329 S.E.2d at 369; *Eno,* 429 N.W.2d at 372; *Paterek,* 890 N.E.2d at 321; *Haberer*, 511 N.W.2d at 285; *Akin, Gump, Strauss, Hauer & Feld, L.L.P.,* 299 S.W.3d at 112. These

4

courts reason that to prevail in a legal malpractice action, the client must show the attorney's negligence caused her damages. *See, e.g., LeHouillier*, 434 P.3d at 159; *Jernigan*, 500 N.E.2d at 807; *Rorrer,* 329 S.E.2d at 369*; Paterek*, 890 N.E.2d at 321; *Haberer,* 511 N.W.2d at 284-85. When a client alleges, as in this case, that an attorney's negligence caused the loss of a legal action, she must show a "'case within a case,'" that is, "but for the attorney's negligence, she would have won a favorable judgment against the underlying defendant." *LeHouillier*, 434 P.3d at 160 (citation omitted). *See also, McDow*, 226 S.E.2d at 146-47; *Klump*, 71 F.3d at 1373; *Jernigan*, 500 N.E.2d at 807; *Rorrer,* 329 S.E.2d at 369*; Eno*, 429 N.W.2d at 372; *Haberer,* 511 N.W.2d at 285. If the client could not have collected the judgment from the defendant in the underlying action, then the client cannot be said to have suffered any damages from the attorney's negligence. *LeHouillier*, 434 P.3d at 160, 162; *McDow*, 226 S.E.2d at 146-47; *Klump*, 71 F.3d at 1375; *Jernigan*, 500 N.E.2d at 807. Because collection of the underlying judgment is intrinsically intertwined with the elements of causation and/or damages in a legal malpractice action, these courts place the burden of showing collectibility of the underlying judgment on the client. *LeHouillier*, 434 P.3d at 160, 162; *Klump*, 71 F.3d at 1375; *Paterek,* 890 N.E.2d at 321-22.

[¶12] The Colorado Supreme Court recently explained the majority position in *LeHouillier*:

> "[I]f the underlying judgment was uncollectible, for example, due to insufficient assets or bankruptcy, the lost value of the judgment is not the proximate result of an attorney's negligence." *Schmidt*, 335 P.3d at 428; *see also Klump . . .*, 71 F.3d [at] 1374 ("To predicate an award of damages upon both the requirement that a judgment would have been recovered and that it would have been collectible ... requires a showing of causation ... that is conceptually no different from that required in negligence cases generally." (quoting Joseph H. Koffler, *Legal Malpractice Damages in a Trial Within a Trial—A Critical Analysis of Unique Concepts: Areas of Unconscionability*, 73 Marq. L. Rev. 40, 52 (1989))). Proving collectibility, therefore, necessarily follows from the rule that plaintiffs must prove causation.
>
> Relatedly, in a legal malpractice claim alleging that an attorney mishandled an underlying case, the measure of a client[]'s damages is the amount of the underlying judgment that could have been collected. A [client] must prove "by a preponderance of the evidence that [she] has in fact suffered damage." *W. Cities Broadcasting, Inc. v. Schueller*, 849 P.2d 44, 48 (Colo. 1993). Such damages must be actual, not "mere

5

speculation or conjecture." *Id*. (quoting *Tull v. Gundersons, Inc.*, 709 P.2d 940, 943 (Colo. 1985)). If the lost judgment was uncollectible, then the client[] has not incurred any legally cognizable damages.

*LeHouillier*, 434 P.3d at 162.  *See also, McDow*, 226 S.E.2d at 147 ("A client suing his attorney for malpractice not only must prove that his claim was valid and would have resulted in a judgment in his favor, but also that said judgment would have been collectible in some amount, *for therein lies the measure of his damages*.") (emphasis added); *Paterek*, 890 N.E.2d at 321 ("We hold that collectibility is logically and inextricably linked to the legal-malpractice plaintiff's damages, for which the plaintiff bears the burden of proof.  In proving what was lost, the plaintiff must show what would have been gained.").

[¶13]  A minority of the jurisdictions to determine that the collectibility of the underlying judgment is a relevant consideration in legal malpractice cases treats collectibility of the underlying judgment as an affirmative defense which must be pled and proven by the attorney.  *See, e.g., Power Constructors, Inc.*, 960 P.2d at 31-32; *Smith,* 868 F.Supp. at 2; *Clary,* 850 N.E.2d at 440; *Jourdain,* 527 A.2d at 1306; *Teodorescu,* 506 N.W.2d at 278; *Carbone*, 864 A.2d at 319; *Lindenman*, 775 N.Y.S.2d at 8; *Kituskie*, 714 A.2d at 1032; *Smith,* 769 S.E.2d at 18; *Schmidt*, 335 P.3d at 428-29.  While these courts recognize that a client must prove a "case within a case" in a legal malpractice case, including that she would have obtained a judgment in the underlying action, they do not believe it logically follows that the client must also prove the underlying judgment would have been collectible.  *See, e.g., Power Constructors, Inc.*, 960 P.2d at 31-32; *Smith,* 868 F.Supp. at 2; *Jourdain,* 527 A.2d at 1306; *Carbone*, 864 A.2d at 317-19; *Kituskie*, 714 A.2d at 1030-31.  They instead believe it is more reasonable to treat the issue of collectibility of a judgment "as a matter constituting an avoidance or mitigation of the consequences of the attorney's malpractice" and therefore "the erring attorney should bear the inherent risks and uncertainties of [pleading and] proving it."  *Lindenman*, 775 N.Y.S.2d at 8.  *See also, Jourdain,* 527 A.2d at 1306; *Smith*, 868 F.Supp. at 2.  The underlying bases for their decisions vary.

[¶14]  Some of these courts argue "fairness" makes collectibility more of an affirmative defense than an element of the client's claim.  They advance three "fairness" concerns.  First, they claim it is unfair to require the client to show the underlying judgment would have been collectible because the need to prove collectibility arises only after the client has established the attorney's malpractice and "[i]t is a burden created by the negligent attorney."  *Schmidt*, 335 P.3d at 428.  *See also, Power Constructors, Inc.*, 960 P.2d at 31; *Clary,* 850 N.E.2d at 440; *Smith*, 769 S.E.2d at 18.  Second, they maintain it is unfair to place the burden on the client because her ability to gather evidence of collectibility may be hindered by the delay that commonly occurs between the client's injury from the underlying defendant's actions (the original injury) and the legal malpractice case.  *See, e.g., Schmidt*, 335 P.3d at 429.  *See also*, *Smith*, 868 F.Supp. at 2; *Clary,* 850 N.E.2d at

6

440; *Lindenman*, 775 N.Y.S.2d at 8-9; *Kituskie*, 714 A.2d at 1031.  Finally, they claim it is unfair to place the burden on the client because the attorney is in the better position to discover and prove uncollectibility.  *Smith*, 769 S.E.2d at 18; *Schmidt*, 335 P.3d at 428.  According to the *Schmidt* court, the attorney should have investigated the underlying claim and advised the client if the underlying judgment would have been uncollectible.  *Schmidt*, 335 P.3d at 428.

[¶15]  Other courts explain their reasons for adopting the minority approach to collectibility by criticizing the majority approach.  They assert the majority approach ignores (1) "the possibility of a settlement between [the client] and the [underlying] defendant, either before or after judgment, which may be encouraged by active litigation of a claim," and (2) the fact that a judgment is usually good for a considerable amount of time after it is entered so, while it may not be immediately collectible, it may have become collectible over time.  *Smith*, 868 F.Supp. at 2.  *See also, Clary*, 850 N.E.2d at 440; *Lindenman*, 775 N.Y.S.2d at 9; *Kituskie*, 714 A.2d at 1032; *Schmidt*, 335 P.3d at 429.  They also maintain the majority approach "has the unfortunate effect of introducing evidence of liability insurance into every malpractice case" and "[t]he rules of evidence and the case law generally prohibit introducing evidence of liability insurance in negligence cases."  *Schmidt*, 335 P.3d at 428-29.  Finally, at least one court adopting the minority approach believes a judgment alone, regardless of whether it is collectible, has value because "a judgment on the merits in one's favor is itself a vindication of the legitimacy of the claim."  *Smith*, 868 F.Supp. at 2.

[¶16]  The only jurisdiction to conclude that the collectibility of an underlying judgment has no relevance in legal malpractice cases, either as an element of the client's legal malpractice claim or as an affirmative defense, is Louisiana.  *Ewing v. Westport Ins. Corp.*, 315 So.3d 175, 180 (La. 2020).  In *Ewing*, which was subsequently abrogated by legislation,[1] the Louisiana Supreme Court reasoned that because Louisiana does not require a legal malpractice plaintiff to prove a "case within a case," "there is no basis to burden a legal malpractice plaintiff with also proving she would have successfully been able to execute on the judgment in the underlying case or that the judgment was collectible."  *Id*. at 180-81.  It also decided it was not proper to consider the collectibility of the underlying judgment as a defense in a legal malpractice case.  *Id*. at 181-82.  The court reasoned that because a legal malpractice claim in Louisiana is a negligence claim, it is governed by La. Stat. arts. 2315 and 2316, neither of which limit the damages available in a legal malpractice action based on the collectibility of the judgment against a particular tortfeasor.  *Id*.  The court also noted, as do some courts adopting the minority approach to collectibility, that the Collectibility Doctrine improperly assumes the underlying tortfeasor will remain

---

[1]*See* La. Stat. Ann. § 9:5605.2 ("In any action for damages by a client against an attorney, the client's recovery against the attorney shall be limited to the amount of damages which the attorney shows by a preponderance of the evidence would have been the maximum amount of damages that the client could have collected in the client's underlying action in which he was represented by the attorney.").

insolvent or unable to pay for the life of the judgment yet, under Louisiana law, a money judgment is valid for ten years and may be revived for successive ten-year periods if appropriate steps are taken. *Id*. at 182. According to the court, "[i]t would be inherently unfair to deprive the malpractice plaintiff of recovery against the negligent attorney if the underlying judgment would be collectible at a later point in time, within the statutory prescriptive period for satisfaction of a judgment." *Id*. at 182-83. Finally, the court believed "[a] money judgment rendered against a tortfeasor has intrinsic value," regardless of its collectibility, and not applying the Collectibility Doctrine to legal malpractice cases was "consistent with the policy that the financial condition of the defendant is not a proper consideration in the determination of compensatory damages." *Id*. at 183. It noted: "We will not allow a malpractice defendant to assert a defense based on the wealth or poverty of the underlying tortfeasor when a defendant in any other type of tort action could not assert a similarly based defense." *Id*.

[¶17] Having reviewed the reasoning of the other jurisdictions to have addressed the applicability of the Collectibility Doctrine in legal malpractice cases, we now turn to our legal malpractice precedent to answer the certified questions.

### *Collectibility Doctrine—Wyoming*

[¶18] To prevail on a legal malpractice claim, the client must prove by a preponderance of the evidence "(1) the accepted standard of care in the legal profession; (2) the attorney's conduct departed from that standard; and (3) the attorney's conduct was the legal cause of the [client's] injuries." *Tozzi v. Moffett*, 2018 WY 133, ¶ 36, 430 P.3d 754, 764 (Wyo. 2018) (citing *Moore v. Lubnau*, 855 P.2d 1245, 1248 (Wyo. 1993)); *Dockter v. Lozano*, 2020 WY 119, ¶ 28, 472 P.3d 362, 370 (Wyo. 2020) ("[A] malpractice action requires the plaintiff to prove his case by a preponderance of the evidence[.]") (citation omitted). With respect to the third factor, the client "must prove that the breach of the standard of care was both the cause in fact and the proximate cause of the injury." *Rivers v. Moore, Myers & Garland, LLC*, 2010 WY 102, ¶ 13, 236 P.3d 284, 291 (Wyo. 2010) (citing *Meyer v. Mulligan*, 889 P.2d 509, 516 (Wyo. 1995)).

[¶19] Generally, "'expert testimony is necessary to demonstrate . . . the causation element'" of a legal malpractice claim because "[t]o prevail in a legal malpractice case, the 'client must employ another attorney to *prove the underlying action would have been successful*'" but for the attorney's misconduct. *Scranton v. Woodhouse*, 2020 WY 63, ¶ 25, 463 P.3d 785, 791 (Wyo. 2020) (quoting *Tozzi*, ¶ 36 n.1, 430 P.3d at 764 n.1, and *Horn v. Wooster*, 2007 WY 120, ¶ 9, 165 P.3d 69, 72 (Wyo. 2007)) (emphasis added). *See also*, *Johnson v. Mathey*, 2023 WY 71, ¶ 27, 532 P.3d 672, 679 (Wyo. 2023) (legal malpractice claim failed as a matter of law because the client "presented no evidence his lawsuit against the City [of Rock Springs] would have been successful but for [the attorney's] misconduct in failing to file the lawsuit"). The requirement of showing the underlying action would have been successful is part of the "case within a case" nature of a legal malpractice action.

8

*Horn*, ¶ 9, 165 P.3d at 72. *See also, Rivers*, ¶ 28, 236 P.3d at 294. Under the "case within a case" paradigm, "[t]o prevail in [her legal malpractice case], the client must employ another attorney to prove the underlying action would have been successful and also prove the [attorney retained to prosecute the underlying action was] negligen[t]." *Horn*, ¶ 9, 165 P.3d at 72. We have held the measure of damages an aggrieved client is entitled to recover from the negligent attorney in a legal malpractice action is "the amount [the client] would have expected to recoup if [her] underlying action had been successful."[2] *Id.*, ¶ 15, 165 P.3d at 74. *See also, Scranton*, ¶ 25, 463 P.3d at 791 ("The damages available to an aggrieved client from a negligent attorney are the amount the client would have expected to recoup if his underlying action had been successful.") (citation omitted).

[¶20] Applying the above principles, we hold the collectibility of the underlying judgment is relevant in legal malpractice cases in Wyoming. To hold otherwise would allow the client to recover more from the attorney than she would have recovered in the underlying action had the attorney not been negligent. As we stated in *Horn*, "there is no legal rationale for granting the [client] damages in excess of what [she] would have obtained if the underlying action had been successful." *Horn*, ¶¶ 20-21, 165 P.3d at 75 ("We . . . reject a general rule that a client may recover more than [she] lost simply because the defendant was an attorney who was negligent in performance of [her] duties. Instead, the well-accepted principles for calculation of damages in both contract and tort cases should be applied and the [client] should receive an award that would place [her] in the same position [she] would have enjoyed had the negligence not occurred."). *See also, Klump*, 71 F.3d at 1375 ("[C]ompensatory damages exist only to compensate the plaintiff, not to punish the defendant. If [the client] could not have collected a full judgment from [the underlying defendant], then [the attorney's] negligence did not injure her in that amount; she simply could not lose what she could never have had."). The answer to the first certified question is "yes."

[¶21] Turning to the second certified question—who bears the burden of showing the collectibility of the underlying judgment—we conclude the client has the burden of

---

[2] In *Horn*, we stated a legal malpractice claim is a hybrid between a tort and a contract action: "Although the standard of care element reflects the law of torts, . . . we have consistently held the legal relationship between an attorney and his client is contractual in nature. . . . Thus, [e]ven though legal malpractice may be attributable to negligence on the part of the attorney, . . . the right to recompense is based upon the breach of the contract with the client." *Horn*, ¶ 10, 165 P.3d at 72 (internal quotation marks and citations omitted). Later, in *Dockter*, ¶ 12, 472 P.3d at 365, we held that "legal malpractice is a tort when the claim is for the breach of a duty imposed by the existence of an attorney/client relationship." Ms. Kappes alleges that *Dockter* "changed the legal malpractice landscape in Wyoming, and defendants may no longer rely on many of the principles that preexisted this decision." Although *Horn* pre-dated *Dockter* and referred to legal malpractice actions as a hybrid of tort and contract law, its holding that the measure of damages in a legal malpractice action is "the amount [the client] would have expected to recoup if [her] underlying action had been successful" was based on both contract and tort law principles and remains good law. *Horn*, ¶¶ 12-14, 165 P.3d at 73-74 ("characterization of the action as arising in contract or tort does not materially change the damages analysis").

9

showing by a preponderance of the evidence that any judgment she would have obtained in the underlying action would have been collectible. We reach this conclusion because the collectibility of the underlying judgment is intrinsically intertwined with the causation/damages element of a legal malpractice claim (the third element). As we stated above, to prevail on a legal malpractice claim, the client must show the attorney's conduct was the legal cause of the client's injuries/damages. *Scranton*, ¶ 25, 463 P.3d at 791. In cases such as this one where the alleged injury/damage is a lost legal action, the plaintiff must show a "case within a case," that is, that she would have been successful in the underlying action but for the attorney's negligence. *Horn*, ¶ 9, 165 P.3d at 72. The measure of her "success" is the amount she would have recouped from the underlying defendant. *Id.,* ¶ 15, 165 P.3d at 74. As a result, to establish she would have been successful in the underlying action, the client must show she would have obtained a favorable judgment <u>and</u> the judgment would have been collectible. Accordingly, the collectibility of a judgment is part and parcel of the causation/damages element of a legal malpractice claim in Wyoming. Because the client has the burden of proving the elements of her claim, it logically follows that the burden of proving that the underlying judgment would have been collectible is on the client.

[¶22] The minority approach discussed above, which treats collectibility of the underlying judgment as an affirmative defense, is inconsistent with our general principle that plaintiffs have the burden of proving the elements of their negligence claims. *See, e.g., Miller by & through Travis v. Sweetwater Cnty. Sch. Dist. #1*, 2021 WY 134, ¶ 15, 500 P.3d 242, 246-47 (Wyo. 2021) ("To establish negligence, a plaintiff must prove: (1) the defendant owed the plaintiff a duty to conform to a specified standard of care; (2) the defendant breached the duty of care; (3) the breach proximately caused injury to the plaintiff; and (4) the injury is compensable by money damages.") (internal quotation marks and citations omitted). Although collectibility of a judgment does not ordinarily fit any of these requirements, in a legal malpractice claim collectibility is part of the requirement to prove damage. To show that the attorney's negligence caused her damage, the client must show that she would have obtained and collected a favorable judgment in the underlying action, "for therein lies the measure of [her] damages [against the attorney]." *McDow*, 226 S.E.2d at 147.

[¶23] Moreover, treating collectibility of the underlying judgment as an affirmative defense in a legal malpractice action is logically inconsistent because affirmative defenses do "not negate the essential elements of [a] plaintiff's cause of action" but rather they "admit[] the legal sufficiency of that cause of action . . . [and] assert[] new matter by which the plaintiff's apparent right to recovery is defeated." *Vroegh v. J & M Forklift*, 651 N.E.2d 121, 125-26 (Ill. 1995) (citations omitted). *See also, Tex. Gulf Sulphur Co. v. Robles*, 511 P.2d 963, 965 (Wyo. 1973) ("A general and almost universal identifying criterion of an affirmative defense is one in avoidance, or stated alternatively *a direct or implicit admission of plaintiff's claim and assertion of other facts which would defeat a right to recovery*."). As the Colorado Supreme court recognized in *LeHouillier*:

Generally, an affirmative defense relies on legal rules or collateral facts to nullify what would otherwise constitute liability. *See Affirmative defense*, Black's Law Dictionary (10th ed. 2014) ("A defendant's assertion of facts and arguments that, if true, will defeat the plaintiff's or prosecution's claim, even if all the allegations in the complaint are true."). For example, a statute of limitations defense bars recovery on an otherwise meritorious negligence claim brought more than two years after an action accrues. *See, e.g.,* § 13-80-102(1), C.R.S. (2018). An affirmative defense, however, does not purport to negate an essential element of a plaintiff's case. But requiring an attorney-defendant to prove that the client's hoped-for damages in an underlying suit were uncollectible effectively forces the attorney to disprove two essential elements of the client[]'s case: causation and damages. Such an approach conflicts with the basic paradigm of tort law.

*LeHouillier*, 434 P.3d at 163.

[¶24] We disagree with the "fairness" concerns advanced by those courts adopting the minority approach to collectibility of the underlying judgment. The fact that the attorney's negligence "creates" the need for the client to establish collectibility is no different than any other negligence case wherein the plaintiff's burden to prove the elements of her claim is created by the defendant's negligence. *LeHouillier*, 434 P.3d at 162-63. Moreover, the fact that the burden to prove collectibility may arise only after the attorney's malpractice has been established is not any different than the burden to prove the other elements of a "case within a case." Yet, the cases adopting the minority approach have no difficulty imposing the burden on the client to show that, but for the attorney's malpractice, she would have prevailed in the underlying action, i.e., the "case within a case." *Power Constructors, Inc.*, 960 P.2d at 31; *Smith,* 868 F.Supp. at 2; *Jourdain,* 527 A.2d at 1306*; Carbone*, 864 A.2d at 317-18; *Kituskie*, 714 A.2d at 1030. The same is true of the concern that the delay between the original injury to the client and the legal malpractice claim may hinder the client's ability to gather evidence of collectibility. That delay may also hinder the client's ability to gather the evidence necessary to establish a "case within a case," but these courts have no difficulty placing the burden of showing a "case within a case" on the client. *Id*. The cases adopting the minority approach do not explain why collectibility of the judgment should be treated differently from any other causation/damages consideration.

[¶25] We also disagree that the negligent attorney is better positioned than the client to discover and prove the collectibility of the underlying judgment. The courts which rely on this as a reason to impose the burden on the attorney to prove uncollectibility of the underlying judgment presume, without any basis, that the attorney investigated the

11

solvency of the defendant in the underlying action prior to committing malpractice and therefore would not have taken the case if the client was insolvent. *Smith*, 769 S.E.2d at 18; *Schmidt*, 335 P.3d at 428. Moreover, requiring the attorney "to prove uncollectibility forces the attorney to prov[e] a negative, which is a much more onerous burden than requiring the client[] to prove collectibility. . . . The attorney[] must first negate the underlying defendant's insurance coverage . . . [and] then, to prove insolvency, the attorney must reconstruct the underlying defendant's entire financial position, accounting for all of his or her assets and liabilities." *LeHouillier*, 434 P.3d at 164 (internal quotation marks and citation omitted).

[¶26] Holding the client responsible for proving the collectibility of the underlying judgment does not ignore the possibility of settlement between the client and the defendant in the underlying action. "To the contrary, courts need not—and should not—overlook the possibility of settlement . . . in determining damages suffered by a malpractice plaintiff. However, [this factor] should be a part of the [client]'s case." *Paterek*, 890 N.E.2d at 322.

[¶27] We recognize that an underlying defendant's ability to pay could change during the life of a judgment. However, as the Seventh Circuit aptly explained, "this argument overlooks the fact that the judgment against [the underlying defendant] would have been immediately dischargeable in a bankruptcy proceeding." *Klump*, 71 F.3d at 1375 n.8 (citing *Perez v. Campbell*, 402 U.S. 637, 648, 91 S.Ct. 1704, 1710, 29 L.Ed.2d 233 (1971)).

[¶28] Requiring the client to prove the collectibility of the underlying judgment would not be inconsistent with the rules of evidence. Under Wyoming Rule of Evidence 411, "[e]vidence that a person was or was not insured against liability is not admissible upon the issue whether he acted negligently or otherwise wrongfully. This rule does not require the exclusion of evidence of insurance against liability when offered for another purpose, such as proof of agency, ownership, or control, or bias or prejudice of a witness." As the Colorado Supreme Court stated, the purpose of excluding evidence of insurance coverage in negligence cases is to ensure "such evidence [does not] improperly influence the jury's determination of liability." *LeHouillier*, 434 P.3d at 163. This concern is not applicable in a legal malpractice case "because the [insurance] coverage question pertains not to the attorney, but to the defendant in the underlying action. So, the risk that a jury would conflate coverage of the underlying defendant and liability of the attorney is low. Moreover, to avoid any jury confusion, courts could bifurcate the trial on the collectibility issue." *Id.* (citation omitted).

[¶29] Because we conclude the client has the burden of proving the collectibility of the judgment in the underlying action, the third and fourth certified questions, which are predicated on us deciding collectibility is an affirmative defense to be pled and proved by the attorney, are not applicable. Moreover, with respect to the fourth question, the mere fact Ms. Rhodes admitted she was negligent by allowing the statute of limitations to expire simply constitutes an admission that she had a duty to Ms. Kappes and her conduct fell

12

below the standard of care (the first and second elements of a legal malpractice case).  Ms. Kappes still had the burden of showing Ms. Rhodes' negligence caused her damages (the third element).  As stated above, this burden includes showing she would have obtained a judgment in the underlying action and the judgment would have been collectible.  *See Smith*, 769 S.E.2d at 17 ("[For] a legal malpractice [claim], the fact of negligence alone is insufficient to support a recovery of damages.  The client must prove that the attorney's negligence proximately caused the damages claimed.") (internal quotation marks and citation omitted).

## CONCLUSION

[¶30] The collectibility of the underlying judgment is an essential part of the causation/damages element of a legal malpractice action in Wyoming which, like the other elements, the client has the burden to prove by a preponderance of the evidence.